J-S25014-22

2022 PA Super 185

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DAVID KENNETH ARNOLD :
:
Appellant : No. 38 WDA 2022

Appeal from the Judgment of Sentence Entered October 21, 2021
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0000268-2020

BEFORE: BENDER, P.J.E., DUBOW, J., and KING, J.

OPINION BY BENDER, P.J.E.: **FILED: October 20, 2022**

Appellant, David Kenneth Arnold, appeals from the judgment of
sentence of an aggregate term of 2-4 years' incarceration, imposed after a
jury found him guilty under two provisions of the contraband statute involving
separate acts.[1] Appellant challenges the constitutionality of the Contraband
Offense, alleging that its ostensible lack of a *mens rea* element violates his
due process rights. Appellant also challenges the weight and sufficiency of
the evidence supporting the Possession Offense. After careful review, we
vacate Appellant's judgment of sentence and remand for a new trial with

---

[1] **See** 18 Pa.C.S. §§ 5123(a) ("controlled substance contraband to confined
persons prohibited") (hereinafter "Contraband Offense"), and 5123(a.2)
("possession of controlled substance contraband by inmate prohibited")
(hereinafter "Possession Offense").

respect to the Contraband Offense. Otherwise, we affirm with respect to Appellant's conviction for the Possession Offense.

Unfortunately, the trial court did not provide a summary of the facts adduced at Appellant's September 22, 2021 jury trial in its Pa.R.A.P. 1925(a) opinion. The following factual summary was provided by Appellant in his Statement of Case:[2]

> On January 22, 2020, Appellant was detained by Butler County Adult Probation for a violation and was subsequently committed to the Butler County Prison. Appellant was taken into the Butler County Prison and placed into a holding cell in the main processing/intake area. While in processing[,] Appellant was searched by the corrections officers. Appellant is a severe hemophiliac and is an []above-the-knee[] amputee who has a prosthetic leg. Appellant's prost[he]tic leg has a foot which he outfits with a sock and shoe. Appellant has no feeling below the knee. At the time of his detention, Appellant possessed a valid

---

[2] The Commonwealth indicates in its brief that it "generally adopts and accepts [Appellant]'s [factual summary], with the understanding that [Appellant]'s factual narrative reiterates [his] trial defenses, defenses that were ultimately refuted by the Commonwealth's trial evidence and the jury's verdict." Commonwealth's Brief at 1. Accordingly, where appropriate, we have added context to Appellant's factual narrative.

prescription for Suboxone[3] and used that controlled substance as part of his addiction therapy.[4]

While in the processing department of the Butler County Prison, Appellant was subject to search. Correction's Officer Summerville searched Appellant. Appellant undressed and removed his prosthetic leg willingly and voluntarily. Officer Summerville removed the shoe and sock and located a piece of folded paper which contained a single white pill. The pill was confiscated and later identified as a schedule III-controlled substance.[5] Appellant denied specific knowledge of the single pill[']s presence and indicated he []forgot[] it was there. He testified at trial to the sequence of events that led him to forget such item, which included the overdose death of his son's mother, the loss of his son to [Children and Youth Services], as well as his prescription medications being stolen on prior occasions.[6] Appellant could not feel the pill in his sock/shoe due to the amputation and

_____

[3] As referred to in this Opinion, "Suboxone" and "Subutex" are name-brand pharmaceutical products, both of which contain the substance buprenorphine. **See** N.T. Trial, 9/22/21, at 62 (testimony of Stacy Cox, the Commonwealth's drug identification expert). Buprenorphine is a Schedule III controlled substance under the Controlled Substance, Drug, Device, and Cosmetic Act. **Id.**; **see also** 35 P.S. § 780-104(2)(i)(11). However, Suboxone and Subutex are distinct in that Suboxone contains both buprenorphine and naloxone, whereas Subutex contains only buprenorphine.

[4] Although Appellant testified that he possessed a valid prescription for Suboxone, **see** N.T. Trial at 75, and the Commonwealth did not attempt to refute that claim at trial, Appellant did not seek to admit his prescription into evidence. In any event, there was no evidence that Appellant notified prison officials that he possessed a prescription for Suboxone when he was being processed at the Butler County Prison.

[5] The Commonwealth's expert stated that the markings on the pill indicated that it was Subutex, not Suboxone. N.T. Trial at 64.

[6] Appellant admitted that, because he ran out of his own prescription for Suboxone (which he believed had been stolen from him), the pill discovered by prison officials was one he had taken from either his son's mother or from his own mother, both of whom had prescriptions for Subutex. N.T. Trial at 86-88. Thus, regardless of whether Appellant had a valid prescription for Suboxone, he admitted that the pill found in his prosthetic leg was not obtained by him pursuant to that prescription.

completely forgot about its presence. The pill was confiscated by the Corrections Officer and ultimately became the subject of the … Contraband [Offense].

Appellant was then committed to the Butler County Prison from the processing department, given his prosthetic leg back, and issued a prison wheelchair. Appellant was strip searched on[] at least[] two occasions[,] with no other items of contraband being located. Appellant was detained at the Butler County Prison awaiting his probation violation hearing. On or about January 27, 2020, corrections officers searched Appellant's prison cell at the Butler County Prison. While Appellant was taking a shower, corrections officers noticed food items within his cell. Keeping food past mealtime is considered a misconduct per Butler County Prison rules. So, the corrections officers conducted a complete cell search. Nothing was found inside Appellant's cell. However, Appellant's prison[-]issued wheelchair was outside of his assigned cell when Correction Officer McClelland noticed a []small hole[] in the wheelchair. Officer McClelland and Officer Wingrove searched the wheelchair. In fact, they completely disassembled the wheelchair down to its component parts and cut apart the seat. The wheelchair was destroyed in the process. Upon disassembly, the officers found three (3) pieces of waxy tape paper, orange in color, and a fingertip portion of a rubber glove which contained []a brown substance[] inside of it. Officers confronted Appellant[,] who completely denied having contraband or hiding anything within the wheelchair. The items found within the wheelchair were confiscated and Appellant was ultimately charged with [the Possession Offense].[7]

Appellant's Brief at 14-17.

The parties agree to the following recitation of the procedural history of

this case:

On September 22, 2021, following trial, a jury convicted [Appellant] … of [the Contraband Offense and the Possession Offense]. The Honorable Timothy F. McCune sentenced Appellant on October 21, 2021, to an aggregate term of not less than

_____

[7] The contraband discovered inside the wheelchair was determined to be "a Suboxone sublingual film[,]" N.T. Trial at 65, containing buprenorphine, *id.* at 62.

- 4 -

twenty-four (24) months and not more than forty-eight (48) months in state prison. The sentence imposed is mandatory as provided for [by Section 5123(a.1), which states] that "[a]ny person convicted of subsection (a) shall be sentenced to a minimum sentence of at least two years of total confinement, notwithstanding any other provision of this title or any other statute to the contrary." Appellant was also sentenced on [the Possession Offense] to a period of total confinement of twelve (12) to twenty-four (24) months to be served concurrently with the Contraband [O]ffense. There was no probation imposed on either count.

On October 27, 2021, Appellant filed a post-sentence motion. Appellant sought [j]udgment of [a]cquittal on both charges[,] raising and preserving the various constitutional challenges contained herein.

Appellant also sought a [n]ew [t]rial preserving the various arguments regarding insufficient evidence and weight given to support Appellant's convictions on both charges. Following oral arguments, the trial court denied Appellant's post-sentence motion on December 30, 2021.

[A n]otice of appeal was filed on January 6, 2022.[8]

_____

[8] The trial court states that the instant appeal is infirm under Pa.R.A.P. 301(b) because Appellant failed to file separate appeals from his judgment of sentence and the order denying his post-sentence motions. **See** Trial Court Opinion ("TCO"), 3/3/22, at 1; Pa.R.A.P. 301(b) ("Every order shall be set forth on a separate document."). The trial court is mistaken. Under Pa.R.Crim.P. 720, when a timely post-sentence motion is filed, "**the** notice of appeal shall be filed" within 30 days of the order deciding the motion (on the merits or by operation of law). Pa.R.Crim.P. 720(A)(2) (emphasis added). "If the defendant does not file a timely post-sentence motion, defendant's notice of appeal shall be filed within 30 days of imposition of sentence, except as provided in paragraph (A)(4)." Pa.R.Crim.P. 720(A)(3). These provisions do not contemplate two, separate notices of appeal. Rather, "[w]hen post-sentencing motions are not filed, **the judgment of sentence constitutes a final and appealable order** for purposes of appellate review and any appeal therefrom must be filed within thirty (30) days of the imposition of sentence[,]" however, "[i]f post-sentencing motions are timely filed, … **the judgment of sentence does not become final for purposes of appeal until the trial court disposes of the motion**, or the motion is denied by
*(Footnote Continued Next Page)*

- 5 -

Appellant's Brief at 13-14 (citation omitted).  Appellant filed a timely, court-ordered Rule 1925(b) statement on January 27, 2022.  The trial court issued its Rule 1925(a) opinion on March 3, 2022.

Appellant now presents the following questions for our review:

I.    Whether the trial court abused its discretion, or erred as a matter of law, when it denied Appellant's motion for judgment of acquittal on the Contraband [Offense] where Appellant ar[gu]ed [the] statute and associated jury instructions [are] unconstitutional and violative of his fund[a]mental right to due process as secured by the constitutions of the United States and this Commonwealth?

II.   Whether the trial court abused its discretion, or erred as a matter of law, when it denied Appellant's motion for judgment of acquittal or new trial on the … Possession [Offense] where Appellant uncontrovertibly testified that he did not knowingly or actually possess such items in a prison issued wheelchair?

III.  Whether the Commonwealth presented insuffic[i]ent evidence to sustain the convictions against Appellant?

Appellant's Brief at 12 (unnecessary capitalization omitted).

## I.

In his first claim, Appellant asserts that the Contraband Offense, and the related instruction defining the offense as read to the jury, are "violative of his fundamental right to procedural and substantive due process rights as

operation of law." ***Commonwealth v. Borrero***, 692 A.2d 158, 159 (Pa. Super. 1997) (emphasis added). Thus, no distinct appeal arose from the order denying post-sentence motions in this case.  Rather, the pendency of Appellant's timely-filed, post-sentence motions tolled the 30-day period for filing a notice of appeal from the underlying judgment of sentence.  Therefore, Appellant was not required to file separate appeals from his judgment of sentence and the order denying his post-sentence motions.

- 6 -

secured by" both the Pennsylvania and federal constitutions.[9] *Id.* at 22. He argues that the Contraband Offense "and its associated jury instruction is constitutionally infirm and illegal because it is a strict liability offense which lacks a specific *mens rea* requirement." *Id.* Therefore, Appellant urges this Court to "declare the Contraband [Offense] and its associated instruction as violative of substantive and procedural due process." *Id.* at 23. The trial court determined that the explicit, plain language of the Contraband Offense demonstrated that the General Assembly intended it to be a strict-liability crime, and reads prior cases addressing the statute, discussed *infra*, as having

---

[9] The trial court stated that this issue was waived due to Appellant's ostensible failure to raise it with adequate specificity in accordance with Pa.R.A.P. 1925(b)(4)(v) ("Each error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court; this provision does not in any way limit the obligation of a criminal appellant to delineate clearly the scope of claimed constitutional errors on appeal."). We note that Appellant's statement of this issue in his Rule 1925(b) statement is identical to the claim as presented to this Court in his Statement of the Questions Presented. *See* Pa.R.A.P. 1925(b) Statement, 1/27/22, at 1 ¶ 1; *see also* Appellant's Brief at 12. The trial court did not elaborate on why it believed Appellant's claim lacked adequate specificity for it to address the issue. However, the court's alternative analysis on the merits demonstrates that it was well-aware of the nature and scope of Appellant's constitutional challenge to the Contraband Offense. *See* TCO at 2-3. The court was first advised of the nature and scope of Appellant's claim (regarding both the statute and the related instructions) when the matter arose during the parties' discussion of jury instructions at trial. *See* N.T. Trial at 111-15. Appellant further distilled and preserved his claim that both the statute and jury instructions violated his due process rights in his post-sentence motion. *See* Appellant's Post-Sentence Motion, 10/27/21, at 2-3 ¶¶ 8-16 (unnumbered pages). Thus, we conclude that Appellant's first issue challenging the constitutionality of the Contraband Offense, as well as the subsidiary claim regarding the constitutionality of the instructions given to the jury for that offense, were not waived in his Rule 1925(b) Statement.

upheld its constitutionality despite the ostensible absence of a scienter element. *See* TCO at 2-3.

For the reasons that follow, and contrary to the trial court's analysis, we hold that the Contraband Offense, Section 5123(a), contains a default *mens rea* of recklessness, provided by 18 Pa.C.S. § 302(c). For that reason, the Contraband Offense does not offend due process principles that disfavor strict liability offenses. Consequently, Appellant is not entitled to any form of relief premised upon the alleged unconstitutionality of the statute. However, the trial court's refusal to issue any *mens rea* instruction to the jury was premised on its misreading of the Contraband Offense as a strict liability crime that did not require one. Due to that error, Appellant is entitled to a new trial on the Contraband Offense.

"As the constitutionality of a statute is a pure question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Omar***, 981 A.2d 179, 185 (Pa. 2009). We are further mindful of the following standards when reviewing the constitutionality of a statute:

> When interpreting a statute, the court must ascertain and effectuate the intent of the legislature and give full effect to each provision of the statute if at all possible. 1 Pa.C.S.[] § 1921(a); ***Commonwealth v. Brown***, … 620 A.2d 1213, 1214 ([Pa. Super.] 1993); ***Commonwealth v. Edwards***, … 559 A.2d 63, 66 ([Pa. Super.] 1989)…. In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. 1 Pa.C.S.[] §

1903(a). *See Commonwealth v. Berryman*, … 649 A.2d 961[, 965] ([Pa. Super.] 1994) (*en banc*).

When construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections because there is a presumption that in drafting the statute, the General Assembly intended the entire statute to be effective. 1 Pa.C.S.[] § 1922. *See Commonwealth v. Mayhue*, … 639 A.2d 421, 439 ([Pa.] 1994); []*Berryman*, … 649 A.2d at 965. Statute headings may be considered in construing a statute. 1 Pa.C.S.[] § 1924. However, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.[] § 1921(b); *Commonwealth v. Reeb*, … 593 A.2d 853, 856 ([Pa. Super.] 1991)….

*Commonwealth v. Lopez*, … 663 A.2d 746, 748 ([Pa. Super.] 1995).

It is axiomatic that: "[A]ny party challenging the constitutionality of a statute must meet a heavy burden, for we presume legislation to be constitutional absent a demonstration that the statute 'clearly, palpably, and plainly' violates the Constitution." *Konidaris v. Portnoff Law Associates, Ltd.*, … 953 A.2d 1231, 1239 ([Pa.] 2008) (citation omitted). The presumption that legislative enactments are constitutional is strong. *Commonwealth v. McMullen*, … 961 A.2d 842, 846 ([Pa.] 2008); *see also* 1 Pa.C.S. § 1922(3) ([stating that,] in ascertaining intent of General Assembly in enactment of statute, presumption exists that General Assembly did not intend to violate federal and state constitutions). All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster. *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, … 877 A.2d 383, 393 ([Pa.] 2005). Moreover, "statutes are to be construed whenever possible to uphold their constitutionality." *In re William L.*, … 383 A.2d 1228, 1231 ([Pa.] 1978).

*DePaul v. Commonwealth*, … 969 A.2d 536, 545–46 ([Pa.] 2009).

*Commonwealth v. Presher*, 179 A.3d 90, 92 (Pa. Super. 2018).

As this Court has previously stated, "the concept of due process" includes "a degree of protection against the imposition of criminal liability without criminal intent on the part of the actor." *Commonwealth v. Heck*, 491 A.2d 212, 219 (Pa. Super. 1985). However, this protection is not absolute; "in certain cases[,] *mens rea* may be dispensed with completely if the legislative intention is to create a strict liability crime." *Id.*

In determining whether the legislature intends to create a strict liability offense, the United States Supreme Court has reasoned that a criminal statute's silence as to a scienter requirement

> by itself does not necessarily suggest that Congress intended to dispense with a conventional *mens rea* element, which would require that the defendant know the facts that make his conduct illegal. On the contrary, we must construe the statute in light of the background rules of the common law, *see United States v. United States Gypsum Co.*, 438 U.S. 422, 436–437 … (1978), in which the requirement of some *mens rea* for a crime is firmly embedded. As we have observed, "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence." *Id.*[] at 436 … (internal quotation marks omitted). *See also Morissette v. United States*, 342 U.S. 246, 250 … (1952) ("The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil[.]").

*Staples v. U.S.*, 511 U.S. 600, 605 (1994) (some internal citations omitted). Despite this general reliance "on the strength of the traditional rule," the *Stapes* Court did not hold that the absence of *mens rea* requirement in criminal statutes is always unconstitutional. *Id.* at 606. Instead, the Court

- 10 -

advised that "offenses that require no *mens rea* generally are disfavored," and that "some indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of a crime." *Id.*

Likewise, the Pennsylvania Supreme Court has recognized that "absolute liability criminal offenses are generally disfavored[] and, absent indicia of legislative intent to dispense with a *mens rea*, a statute will not be held to impose strict liability." *Commonwealth v. Moran*, 104 A.3d 1136, 1149 (Pa. 2014) (quotation marks omitted). Nevertheless, the *Moran* Court recognized a limited exception to the general rule disfavoring strict liability offenses:

> Although the imposition of strict liability is generally disfavored, this Court has recognized the legislature may create statutory offenses dispensing with a *mens rea* in fields that are essentially non-criminal in order "to utilize the machinery of criminal administration as an enforcing arm for social regulations of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt." *Commonwealth v. Koczwara*, … 155 A.2d 825, 827–28 ([Pa.] 1959). The penalty for such offenses concerning the public welfare is generally relatively light. *Id.*[] at 827.

*Moran*, 104 A.3d at 1149.

Pennsylvania's statutory scheme for criminal offenses clearly reflects the traditional rule of criminal jurisprudence as described in *Staples* and *Moran*. Our General Assembly expressed its preference for *mens rea* requirements in Section 302(a) of Title 18, stating: "**Minimum requirements of culpability.--**Except as provided in section 305 of this title (relating to limitations on scope of culpability requirements), a person is not guilty of an

offense unless he acted intentionally, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense." 18 Pa.C.S. § 302(a). Anticipating that explicit scienter requirements might be omitted from the definitions of crimes under Title 18, the General Assembly further provided a default *mens rea* element under Section 302(c). That provision provides as follows: "**Culpability required unless otherwise provided.--**When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." 18 Pa.C.S. § 302(c). Accordingly, our Supreme Court has "repeatedly held [that Section] 302 provides the default level of culpability where a criminal statute does not include an express *mens rea*." **Moran**, 104 A.3d at 1150. Indeed, as noted by the **Moran** Court:

> The comment to [Section] 302 also supports this conclusion, providing:
>
>> The purpose of this section is to clearly define the various mental states upon which criminal liability is to be based. Under existing law the words "wilfully" or "maliciously" are used in many cases. However, these words have no settled meaning. In some instances there is no expressed requirement concerning the existence of *mens rea*. These defects in existing law are remedied by this section which sets forth and defines the culpability requirements and eliminates the obscurity of the terms "malice" and "wilful."
>
> 18 Pa.C.S. § 302 cmt. (emphasis added) (internal citations omitted).[14]
>
> [14] Furthermore, the explanatory note to [Section] 2.02(3) of the [Model Penal Code ("MPC")], on which [Section] 302(c) is based, **see id.** ("This section is derived from

- 12 -

Section 2.02 of the [MPC].”), provides when the General Assembly intends intent, knowledge, or recklessness to suffice for the establishment of culpability for a particular offense, “the draftsmen need make no provision for culpability; it will be supplied by this subsection.” MPC § 2.02 explanatory note (2001). Accordingly, the legislature's refraining from providing an express culpability requirement … indicates its intent that [Section] 302(c)'s default *mens rea* apply.

*Moran*, 104 A.3d at 1149–50.

The Contraband Offense, as recognized by the trial court, does not contain an explicit *mens rea*:

A person commits a felony of the second degree if he sells, gives, transmits or furnishes to any convict in a prison, or inmate in a mental hospital, or gives away in or brings into any prison, mental hospital, or any building appurtenant thereto, or on the land granted to or owned or leased by the Commonwealth or county for the use and benefit of the prisoners or inmates, or puts in any place where it may be secured by a convict of a prison, inmate of a mental hospital, or employee thereof, any controlled substance included in Schedules I through V of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, (except the ordinary hospital supply of the prison or mental hospital) without a written permit signed by the physician of such institution, specifying the quantity and quality of the substance which may be furnished to any convict, inmate, or employee in the prison or mental hospital, the name of the prisoner, inmate, or employee for whom, and the time when the same may be furnished, which permit shall be delivered to and kept by the warden or superintendent of the prison or mental hospital.

18 Pa.C.S. § 5123(a) (footnote omitted). As applicable to the circumstances of this case, a violation of the explicit terms of the Contraband Offense occurred if Appellant: 1) brought, 2) into the prison, 3) a Schedule I-V controlled substance, 4) without written permission signed by the prison physician. The trial court concluded that the “plain language” of this statute

- 13 -

shows that "it is one of strict liability with no room to argue intent, *mens r*[*ea*,] or *de minimus* amounts [of the prohibited substances]." TCO at 2-3. Although we agree with the trial court that the Contraband Offense does not contain any explicit *mens rea*, our analysis does not stop with that omission.

As the **Staples** Court advised, the absence of an express *mens rea* in a criminal statute does not alone demonstrate a legislature's intent to impose strict liability for a crime, given that principles of due process generally favor a scienter requirement for criminal offenses. **See Staples**, 511 U.S. at 605. And, in **Moran**, the Pennsylvania Supreme Court held that the omission of a *mens rea* from the definition of a criminal offense instead implies that a defect exists in the statute that is remedied by Section 302. **Moran**, 104 A.3d at 1149–50. Section 302(a) expresses the General Assembly's own preference against strict liability in the Crimes Code, and Section 302(c) explicitly provides a *mens rea* when it is otherwise absent from the definition of a crime.

Thus, while due process permits the General Assembly to create strict liability offenses as exceptions to the general rule, we ascertain no intent to do so here merely from the legislature's failure to include an explicit scienter element within the text of Section 5123(a). What Section 5123(a) omits, Section 302(c) provides. Moreover, our rationale in rejecting the trial court's conclusion that the Contraband Offense is a strict liability offense is further buttressed by the fact that Section 5123(a) is defined in the Crimes Code, and carries with it a mandatory minimum sentence of two years' incarceration. Therefore, it does not resemble an "essentially non-criminal" offense with a

"relatively light" penalty, for which strict liability offenses are sometimes permissible. ***Moran***, 104 A.3d at 1149.

Additionally, our review of the authorities cited by the trial court reveals that none of the cases cited by the court suggested, much less held, that Section 5123(a) is a strict liability offense. In ***Commonwealth v. Williams***, 579 A.2d 869 (Pa. 1990), for instance, our Supreme Court considered whether "the mere possession of marijuana by a visitor to a prison, absent ***an intent to deliver the substance to persons confined there***, constitutes a violation of [Section] 5123(a)." ***Id.*** at 870 (emphasis added). The lower courts had interpreted the phrase, "for the use and benefit of the prisoners or inmates," as used in the Contraband Offense, to mean "that criminal liability does not attach unless the purpose of bringing the substance into the prison was 'for the use and benefit of the prisoners or inmates.'" ***Williams***, 579 A.2d at 870 (quoting 18 Pa.C.S. § 5123(a)). The ***Williams*** Court rejected that reading of the statute, concluding instead that the "phrase does not modify the word 'brings' but rather modifies the language to which it is directly attached, to wit, 'on the land granted to or owned or leased by the Commonwealth or county.'" ***Id.*** (quoting 18 Pa.C.S. § 5123(a)). The ***Williams*** Court also discussed the legislative purpose behind Section 5123(a), but only regarding whether the specific *mens rea* erroneously imposed by the

lower court comported with the General Assembly's intent.[10]  The Court did not address whether Section 5123(a) was a strict liability crime without **any** scienter element; instead, it only rejected an erroneous interpretation of the text of the statute.  Importantly, the **Williams** Court did not consider or discuss the default *mens rea* provided by Section 302(c), nor did its analysis touch upon the concept of strict liability.  Consequently, the **Williams** Court neither held nor presumed that that Section 5123(a) is a strict liability offense, contrary to the trial court's interpretation of that case.

In **Commonwealth v. Olavage**, 894 A.2d 808 (Pa. Super. 2006), also cited by the trial court, Olavage was convicted of the Contraband Offense for reentering a prison, at the end of his work-release shift, with

_____

[10] The Court stated:

> The legislative purpose in enacting 18 Pa.C.S. § 5123(a) was obviously to prevent the acquisition of contraband substances by persons confined in prisons and mental hospitals.  Although this purpose would be served to some extent by prescribing punishment for persons who bring contraband substances into institutions with the intention of transferring them to prisoners or inmates, there would still be a risk, perhaps a substantial one, that substances brought into institutions without such an intent might still fall into the hands of such persons.  We believe that, in recognition of this risk, and in response to the need to address the serious problems posed by infiltration of contraband substances into institutional settings, the legislature chose to employ comprehensive language that made the offense not dependent upon whether a person bringing contraband substances into such a setting did so with the intention of transferring them to the use of persons confined there.

*Id.* at 871.

methamphetamine in his possession. *Id.* at 810. He raised four claims, two of which concerned whether he had been subjected to selective prosecution by the Commonwealth. *Id.* at 811. In his third claim, Olavage argued that his violation of Section 5123(a) should have been deemed a *de minimus* infraction by the trial court, citing **Williams**. *Id.* at 812.[11] In his fourth and final claim, Olavage asserted "that it was not the intent of the Legislature for the mandatory minimum sentence to apply to a [Section] 5123(a) conviction based upon bringing contraband into a prison." *Id.*[12] None of the issues addressed in **Olavage** concerned whether Section 5123(a) was a strict liability offense.

The last case cited by the trial court was **Commonwealth v. Sarvey**, 199 A.3d 436 (Pa. Super. 2018), a collateral appeal from Sarvey's numerous drug convictions stemming from her possessing a bag of prohibited pills in

---

[11] In *dicta*, the **Williams** court had suggested that, "in an appropriate case[,] the defense of a *de minimis* infraction might be asserted" against the Contraband Offense, in the context of its discussion of hypothetical circumstances where unwitting visitors would fall victim to the statute, and its harsh mandatory sentence, for bringing their own prescribed medication into an institution "with honorable intentions[.]" **Williams**, 579 A.2d at 871. The **Olavage** Court held the trial court had not abused its discretion in dismissing Olavange's *de minimus* claim, noting its doubt that "the Pennsylvania Supreme Court intended to include in this good faith, *de minimis* exception a work-release prisoner who had strapped a cache of illegal methamphetamine to his inner thigh." **Olavage**, 894 A.2d at 812.

[12] This Court concluded that the plain language of Section 5123(a.1) applied the mandatory-minimum sentence to violations of the Contraband Offense. *Id.*

prison and delivering "one-half of a tablet of Oxycodone and one tablet of []Ambien[] to another inmate." *Id.* at 443. The Contraband Statute is only briefly discussed in *Sarvey* in the Court's analysis of the claim that Sarvey's sentence for that offense should have merged with her sentence for possession with intent to deliver ("PWID"), 35 P.S. § 780-113(a)(30). *Id.* at 447-51. The *Sarvey* Court held that merger did not apply because, *inter alia*, "PWID contains an element—namely the intent to deliver—that is absent in the [Contraband Offense]. Similarly, the elements of [the Contraband Offense] are satisfied when an individual brings a controlled substance into a prison without a permit, regardless of whether they intended to deliver said substance to an inmate." *Id.* at 450. In defining the elements of the Contraband Offense, the *Sarvey* Court cited *Williams*. *Id.* at 449. However, at no point did the *Sarvey* Court identify Section 5123(a) as a strict liability offense, nor did it discuss the *mens rea* of the Contraband Offense beyond citing the holding in *Williams* that the statute did not require a showing of a specific intent to deliver a prohibited substance to an inmate. Thus, none of the cases cited by the trial court held that Section 5123(a) is a strict liability offense, nor did any of those cases presuppose that it was.

Consequently, for the above reasons, we conclude that the trial court erred in finding that the Contraband Offense imposes strict liability due to a lack of an express *mens rea* in the text of Section 5123(a). Because that provision does not prescribe the "culpability sufficient to establish a material element of [the] offense[,]" Section 302(c) provides a minimum *mens rea* of

recklessness. 18 Pa.C.S. § 302(c). Pertinent here, as several elements were effectively conceded or otherwise uncontested by Appellant at his jury trial, to prove a violation of the Contraband Offense, the Commonwealth was required to show that Appellant acted "intentionally, knowingly or recklessly" in bringing the Subutex pill with him into prison. *Id.* As Appellant's constitutional challenge to the statute is premised on the Contraband Offense ostensibly lacking a *mens rea*, that aspect of his first claim is meritless.

However, Appellant requested an "ignorance or mistake" jury instruction as to both the Contraband and Possession Offenses, arguing that he had presented evidence (his testimony) that negated the *mens rea* of both offenses, contending with respect to the Contraband Offense that he did not possess knowledge that the Subutex pill was in his possession at the time he entered the prison, or that "he was reasonably ignorant or mistaken concerning the fact that he possessed [it]." *See* N.T. Trial at 111. The court ultimately refused the instruction for the Contraband Offense based on its erroneous conclusion that Section 5123(a) had no *mens rea*. *Id.* at 114 ("Doesn't seem to be a *mens rea* of knowing in that crime. It does seem to be a strict liability crime."). Defense counsel noted that the court's refusal to issue the instruction would become an appellate issue, and further argued that every offense involving the possession of a controlled substance has a *mens rea* element pertaining to the accused's knowledge that he or she possessed the substance in question. *See id.* at 115. Appellant now maintains on appeal that the jury instruction issued by the trial court was constitutionally infirm

due to the omission of a scienter element, thereby depriving the jury "of the ability to consider any evidence from [Appellant] as to [his] state of mind…." Appellant's Brief at 36. Appellant argues that the "jury instruction is violative of his fundamental right to … due process" under the Pennsylvania and United States Constitutions. *Id.* at 37.

After the trial court denied Appellant's request for an ignorance/mistake jury instruction as to the Contraband Offense, the prosecutor argued to the jury that, "as far as [the Contraband Offense] is concerned, you are not going to hear from the Judge that [Appellant] had to have knowledge that he was bringing it into the prison." N.T. Trial at 125. The prosecutor further stated:

> It doesn't matter if [Appellant] knew he was doing it or not. That only comes into count on [the Possession Offense]. So, when you are deliberating, the Judge is going to instruct you to follow the law as he gives it to you. You may want to read a knowing element into it. You might think that's harsh. But that is the law. And you have sworn an oath to follow that.

*Id.*

The trial court's subsequent instruction to the jury regarding the Contraband Offense omitted any mention of *mens rea*:

> To find the defendant guilty of this offense, you must find the following elements have been proven beyond a reasonable doubt. First, that the defendant brought into a prison owned by the County of Butler controlled substances so classified under Pennsylvania law. I instruct you that buprenorphine hydrochloride and Suboxone are controlled substances. And second, that the defendant did so with without written permit signed by the physician of the prison.

*Id.* at 137. Because neither of these elements had been disputed at trial, the trial court effectively instructed the jury to convict Appellant regardless of his testimony that he forgot that the pill was still in the sock of his prosthetic leg when he entered the prison. That testimony spoke directly to the *mens rea* for the Contraband Offense. This jury-instruction error resulted from the trial court's misreading of Section 5123(a) as a strict liability offense, and its related failure to apply the default *mens rea* mandated by Section 302(c). This error prejudiced Appellant, as he only proffered a defense to the Contraband Offense based on his claim that he was unaware that he had brought the Subutex pill into the prison. While the jury was ultimately free to disbelieve Appellant's testimony in that regard, the jury was relieved of the responsibly of making that credibility determination due to the trial court's constitutional error in issuing a jury instruction on the Contraband Offense without a *mens rea* element.

Although Appellant directs much of his argument toward the constitutionality of the standard jury instructions for the Contraband Offense, which does not contain a *mens rea* element, he does so premised on the trial court's strict-liability interpretation of Section 5123(a). However, we ascertain no defect in the standard Section 5123(a) jury instruction. The constitutional defect in this case stemmed not from the court's reading the standard instruction for that offense to the jury but, instead, from the trial court's omission of an accompanying instruction relaying the default *mens rea* from

Section 302(c) and/or from the trial court's failure to issue an ignorance/mistake jury instruction given the nature of Appellant's testimony.

Because of the trial court's error in issuing a jury instruction for Section 5123(a) without also defining the default *mens rea* provided by Section 302(c), Appellant is entitled to a new trial for that offense. **See Commonwealth v. Woosnam**, 819 A.2d 1198, 1206–07 (Pa. Super. 2003) (granting a new trial due to trial court error in effectively making leaving the scene of an accident involving death or personal injury "a strict liability crime[,]" where the court erroneously "refused to instruct the jury that the Commonwealth had any burden of proving any amount of knowledge on Appellant's part that she was involved in an accident involving death or injury[,]" which "removed from the jury's consideration the only defense presented by [the a]ppellant and virtually instructed the jury to find in favor of the Commonwealth").

## II.

Next, Appellant claims that the trial court abused its discretion when it denied his post-sentence motion for judgment of acquittal on the Possession Offense, contending that relief was warranted because Appellant "uncontrovertibly testified that he did not knowingly possess any items of contraband found within [the] prison[-]issued wheelchair[,]" Appellant's Brief at 38, and because it was "uncontested that the wheelchair provided to Appellant by Butler County Prison staff was not searched prior to Appellant receiving it[,]" *id.* at 45. Appellant argues that the wheelchair in question

could have been accessed by any number of inmates over an indeterminate amount of time, and that there was "no chain of custody evidence presented to the jury which would give it sufficient weight to permit and support Appellant's conviction." *Id.*

Appellant's claim asserts a challenge to the weight of the evidence supporting his conviction for the Possession Offense, which he preserved for our review in his post-sentence motion. *See* Post-Sentence Motion, 10/27/21, at 4-5 ¶ 28-36 (unnumbered pages).

> The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.
>
> When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.
>
> Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

*Commonwealth v. West*, 937 A.2d 516, 521 (Pa. Super. 2007) (citations omitted).

Here, the trial court determined that the verdict was not against the weight of the evidence, noting that the jury "chose to believe the testimony of the Commonwealth's witnesses and reached the conclusion that [Appellant] did possess or have under his control the" Suboxone sublingual film found in the wheelchair. TCO at 3. Furthermore, the Commonwealth argues:

> [Appellant]'s claim here must fail because the jury, in convicting him of [the] Possession [Offense], incontrovertibly did not believe [his] testimony that he did not possess the Suboxone [s]trips. The jury, as finder of fact, while making determinations of witness credibility and the weight of the evidence, is free to believe all, part, or none of the evidence. ***Commonwealth v. Cousar***, 928 A.2d 1025, 1032 (Pa. 2007). As discussed, *supra*, regarding the sufficiency of the evidence for [the] Possession [Offense],[13] the

---

[13] The Commonwealth maintains that the evidence supporting Appellant's conviction for the Possession Offense was not limited to his constructive possession of the wheelchair. The Commonwealth's witnesses testified that Appellant was visibly agitated when he discovered his cell was being searched. ***See*** Commonwealth's Brief at 18 (citing N.T. Trial at 43-44). This led the officers to conduct a more thorough search because Appellant's behavior raised red flags. ***Id.*** The Commonwealth also points to Appellant's own testimony "that he was going through withdrawal[] when he first entered the prison (***see*** [N.T. Trial at 106]), making it highly likely he would take steps, by any means necessary, to access Suboxone in order to curb his sickness." ***Id.*** at 19-20. Additionally,

> [i]n closing, the Commonwealth submitted to the jury that [Appellant] likely smuggled the Suboxone strips into the prison in his rectum (***see*** [N.T. Trial at] 127), a theory supported by the circumstantial evidence. Both Officers McClelland and Wingrove testified that they observed a distinct fecal matter smell, both on the wheelchair and on the baggie containing the Suboxone strips. [***Id.*** at 45-46]. In addition, Detective John Johnson of the Butler County District Attorney's office, the affiant in this case, testified that a blue piece of plastic (Commonwealth's Ex. "6")

*(Footnote Continued Next Page)*

Commonwealth did indeed present circumstantial evidence at trial that credibly linked [Appellant] to possession of the Suboxone strips. Even though [Appellant] surmises the evidence surrounding the wheelchair weighs in his favor, the dissonance between his testimony and the Commonwealth's evidence does not entitle him to relief. A new trial should not be granted because of a mere conflict in testimony or because the judge would have arrived a different conclusion. *Commonwealth v. Hunter*, 768 A.2d 1136, 1143 (Pa. Super. 2001). As a result, the trial court did not abuse its discretion in denying the motion for new trial.

Commonwealth's Brief at 22.

We agree with the Commonwealth's analysis, and we ascertain no abuse of discretion by the trial court in denying Appellant's weight-of-the-evidence claim.

## III.

In his third and final claim, Appellant argues that the Commonwealth "presented insufficient evidence to sustain the convictions against Appellant." Appellant's Brief at 49. Appellant's argument in support of this claim comprises only half of a page, in which he incorporates his arguments regarding his first two claims. *Id.*

The trial court deemed this issue waived, as Appellant "fail[ed] to 'specify how the evidence failed to establish which element or elements of the

---

recovered during the wheelchair search resembled the finger tip of a plastic glove. [*Id.* at 54]. Detective Johnson explained that this type of evidence is common in contraband cases, where the accused will place contraband in the tip of a plastic glove, tie it off, and insert it into a bodily cavity or swallow it, thereby avoiding detection of the contraband during a cursory strip search. *Id.*

Commonwealth's Brief at 20.

two offenses for which he was convicted'" in his Rule 1925(b) statement. TCO at 4 (quoting **Commonwealth v. Williams**, 959 A.2d 1252, 1257 (Pa. Super. 2008)). Indeed, in the Rule 1925(b) statement, Appellant stated the question: "Whether the Commonwealth presented sufficient evidence to sustain the convictions against [Appellant]?" Pa.R.A.P. 1925(b) Statement, 1/27/22, at 1 ¶ 3. The trial court did not address the claim on the merits due to this deficiency. **See** TCO at 4. We note that Appellant does not address the trial court's finding of waiver in his brief to this Court. Furthermore, Appellant was instructed in the trial court's order directing him to file a Rule 1925(b) statement that: "Any issue not properly included in the Statement … shall be deemed waived[,]" Order, 1/19/22, at 1, echoing the text of Rule 1925, which provides that: "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived[,]" Pa.R.A.P. 1925(a)(4)(vii).

> It is well-established that any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review. **See Commonwealth v. Lord**, … 719 A.2d 306, 309 ([Pa.] 1998). Further, an appellant's concise statement must identify the errors with sufficient specificity for the trial court to identify and address the issues the appellant wishes to raise on appeal. **See** Pa.R.A.P. 1925(b)(4)(ii) (requiring a Rule 1925(b) statement to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge"). This Court explained in **Riley v. Foley**, 783 A.2d 807, 813 (Pa. Super. 2001), that Pa.R.A.P. 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal.
>
> A Rule 1925(b) concise statement that is too vague can result in waiver of issues on appeal. **See Commonwealth v. Dowling**, 778 A.2d 683, 686-[]87 (Pa. Super. 2001) ([stating that] "a

- 26 -

concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all").

> If [an a]ppellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. [Where a] 1925(b) statement [] does not specify the allegedly unproven elements[,] … the sufficiency issue is waived [on appeal].

> **Commonwealth v. Tyack**, 128 A.3d 254, 260 (Pa. Super. 2015) (citation omitted).

**Commonwealth v. Bonnett**, 239 A.3d 1096, 1106 (Pa. Super. 2020), *appeal denied*, 250 A.3d 468 (Pa. 2021).

We agree with the trial court that Appellant's third claim in his Rule 1925(b) statement was too vague and, therefore, waived. **See id.** (holding that the appellant waived his sufficiency claim due to lack of specificity in his Rule 1925(b) statement where he had only provided "a blanket statement wherein he declares the evidence was insufficient to convict him of all charges").

## Conclusion

In sum, we affirm Appellant's judgment of sentence for the Possession Offense, having deemed his second claim meritless, and his third claim waived. However, we vacate Appellant's judgment of sentence for the Contraband Offense, and remand for a new trial in accordance with this Opinion.

Judgment of sentenced **affirmed** in part and **vacated** in part. Case **remanded** for a new trial. Jurisdiction **relinquished**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/20/2022</u>