J-S06045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERNEST MALACHI SCOTT | : | |
| | : | |
| Appellant | : | No. 781 WDA 2024 |

Appeal from the Judgment of Sentence Entered March 11, 2024
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s):  CP-17-CR-0000877-2022

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:  **FILED:  March 28, 2025**

Ernest Malachi Scott ("Appellant") appeals from the aggregate judgment of sentence of 35 months to 7 years of incarceration imposed following his convictions of one count each of possession of a controlled substance (contraband/inmate), possession with the intent to deliver a controlled substance, possession of a controlled substance, and possession of drug paraphernalia.[1]  Appellant's counsel, Lance T. Marshall, Esq., concludes that Appellant has no non-frivolous issues to raise in this appeal and, thus, he seeks to withdraw his representation of Appellant pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  After careful review, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

---

[1] 18 Pa.C.S. § 5123(a.2), 35 Pa.C.S. §§ 780-113(a)(30), (a)(16), and (a)(32), respectively.

We take the facts of this case from the trial transcript. Appellant was an inmate at the State Correctional Institution ("SCI") at Houtzdale at the time of this incident. N.T. Jury Trial, 1/12/24, at 22. At his trial, Corrections Officer ("CO") Edward Sinclair testified that he was informed by an SCI intelligence agent, Lieutenant Paul English, that Appellant possessed suboxone, a controlled substance. *Id.* To investigate, CO Sinclair and his partner entered Appellant's housing unit and conducted a search of his cell. *Id.* at 23. When Appellant disrobed during this search and handed his sweatpants to CO Sinclair as directed, a plastic baggie with several individually wrapped pieces of suboxone was found concealed in a pocket. *Id.* at 23-24. Appellant was then restrained. *Id.* at 24.

In his defense, Appellant claimed entrapment by the corrections officers, and explored before the jury how an inmate could have obtained the drugs, either through contact visits with persons from outside the prison or via the prison mail system. Appellant explained that he currently had two civil lawsuits pending against the Department of Corrections, and inferred that these suits were the reason he was being set up here.[2] According to Attorney Marshall, Appellant's trial strategy was based on the maxim, "[W]hen you have eliminated all which is impossible, whatever remains, however improbable, must be the truth." *Anders* Brief at 11-12. In other words,

---

[2] While Appellant claims this as a motive, we note that the suboxone was found on him on October 27, 2021, and his two lawsuits in federal court were filed on November 8, 2021, and April 13, 2022, respectively. N.T. Jury Trial at 97-101.

Appellant argued at trial that, by eliminating all possible known avenues for an inmate to obtain suboxone, Appellant established the truth of his testimony — that he obtained the drug from Lieutenant English and was "working for security" in the prison. *Id.* at 12. The defense's theory was no surprise to the Commonwealth. Defense counsel at trial asked CO Sinclair whether Appellant had claimed to be "working for security." N.T. Jury Trial at 38. In response, CO Sinclair stated, "I don't believe they have anybody that really works for security as an inmate there. I don't think that is a position there." *Id.* at 39. Nonetheless, CO Sinclair stated that he never asked Appellant how he came into possession of the suboxone, and stressed that inmates were not permitted to possess suboxone at any time. *Id.* at 40.

Corrections Criminal Investigator Daniel Cuiffi testified that the suboxone found on Appellant during this search was different from the suboxone that might be dispensed by medical personnel at the jail; the suboxone in the infirmary came only in pill form or via an injection, not the small strips of the substance that were in the baggie found in Appellant's pants. *Id.* at 45-46. Agent Cuiffi transported the seized substance to the crime lab for analysis. *Id.* at 48. Further, Agent Cuiffi testified that he asked Lieutenant English about Appellant's claims to be "working security," but that he ultimately concluded the claim was false because, "[W]e don't operate that way. And I know the [s]ecurity [o]ffice doesn't work that way. … We don't have inmates working for us unless they're in an official capacity. And this is absolutely not an official capacity." *Id.* at 52. Again, however, the agent

explained that he did not investigate from where the suboxone ultimately came. *Id.* at 53.

Following a jury trial, Appellant was convicted of all charges and the trial court sentenced him to an aggregate term of 35 months to 7 years of incarceration. Appellant filed a timely post-sentence motion arguing that the evidence was insufficient to support his convictions because the Commonwealth did not prove where Appellant had obtained the suboxone. After ordering the parties to submit briefs on the matter, the trial court denied the post-sentence motion on May 28, 2024. Appellant filed a timely notice of appeal on June 27, 2024. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.[3]

Before reaching the merits of Appellant's claim, we must first address Attorney Marshall's petition to withdraw. On October 22, 2024, Attorney Marshall filed a petition to withdraw along with an *Anders* brief. When faced with such a filing, this Court "must first determine whether appellate counsel

---

[3] A month after the notice of appeal was filed, Appellant filed a *pro se* petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. As his direct appeal was pending, the trial court properly denied this petition. *See Commonwealth v. Williams*, 215 A.3d 1019, 1023 (Pa. Super. 2019) ("If a petition is filed while a direct appeal is pending, the PCRA court should dismiss it without prejudice towards the petitioner's right to file a petition once his direct appeal rights have been exhausted."); *see also Commonwealth v. Leslie*, 757 A.2d 984, 985-86 (Pa. Super. 2000) (holding that a PCRA petition may only be filed after an appellant has waived or exhausted his direct appeal rights; the PCRA court improperly considered Leslie's PCRA petition filed during the pendency of his direct appeal).

has satisfied all of the requirements that court-appointed counsel must meet before leave to withdraw may be granted." **Commonwealth v. Weitzel**, 304 A.3d 1219, 1223 (Pa. Super. 2023).

When seeking to withdraw as counsel on a direct appeal under **Anders**, counsel must file a petition stating that he or she has made a conscientious examination of the record and has determined that the appeal would be frivolous. **Commonwealth v. Watts**, 283 A.3d 1252, 1254 (Pa. Super. 2022). Further, counsel must also file a brief referring to any issues that might arguably support the appeal. **Id.** The brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. Counsel must also provide a copy of the **Anders** brief to his client, advise the appellant of his right to retain a new lawyer or to proceed *pro se* on appeal, and inform the appellant that he may raise any additional points that the appellant deems worthy of the court's attention. **Weitzel**, 304 A.3d at 1223. After determining that counsel has satisfied the technical requirements of **Anders** and **Santiago**, this Court must then "conduct its own review of the trial court's proceedings and render an

independent judgment as to whether the appeal is wholly frivolous." ***Id.*** at 1224.

Following review, we conclude that counsel has complied with each of the requirements under ***Anders*** and ***Santiago***. Attorney Marshall indicates that he made a conscientious examination of the record, and his ***Anders*** brief includes a summary of the relevant history of the case, refers to the pertinent portions of the record, and sets forth the conclusion that Appellant's appeal is frivolous. Counsel also explains his reasoning in reaching that conclusion, and supports his rationale with citations to the record and pertinent legal authority. Further, the record includes both counsel's petition to withdraw and a copy of the letter sent to Appellant in which Attorney Marshall informed Appellant of his right to proceed *pro se*, to retain private counsel, or to withdraw his appeal. The letter further informed Appellant that he had the right to raise any additional points to this Court as he deemed necessary.[4] Accordingly, Attorney Marshall has complied with the technical requirements for withdrawal. We will now independently review the record to determine if Appellant's issue is frivolous, and to ascertain if there are any other, non-frivolous issues he could pursue on appeal.

In Attorney Marshall's ***Anders*** brief, he raises the following issue for our review:

---

[4] To date, Appellant has not filed a reply to counsel's ***Anders*** brief.

Did the trial court abuse its discretion when it denied [Appellant's] request for a new trial on the grounds that the verdict was against the weight of the evidence[?]

***Anders*** Brief at 13.

Preliminarily, we note that a verdict is against the weight of the evidence "only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." ***Commonwealth v. VanDivner****,* 962 A.2d 1170, 1177 (Pa. 2009) (citation omitted). It is well-established that a weight of the evidence claim is addressed to the discretion of the trial court, and "[a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." ***Commonwealth v. Widmer****,* 744 A.2d 745, 752 (Pa. 2000). When evaluating the trial court's ruling, we must remember that an abuse of discretion is not merely an error in judgment. ***Commonwealth v. Arnold***, 284 A.3d 1262, 1277 (Pa. Super. 2022). Instead, an abuse of discretion is shown when a court's decision is based upon bias, partiality, prejudice, ill-will, manifest unreasonableness, or a misapplication of the law. ***Id.*** By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record. ***Id.***

Thus, the role of the trial court in addressing a weight claim is to determine whether, notwithstanding all the evidence, certain facts are so clearly of greater significance that to ignore them, or to give them equal import with all other facts from the case, is to deny justice. ***Widmer***, 744 A.2d at 752. Even so, because a motion for a new trial on the grounds that

the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to support the verdict, the trial court is under no obligation to review the evidence in the light most favorable to the verdict winner. ***Id.***

Moreover, in reviewing a challenge to the weight of the evidence, the function of an appellate court is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying issue. ***VanDivner***, 962 A.2d at 1178. Appellate review "is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose [an] abuse of discretion." ***Commonwealth v. Diggs***, 949 A.2d 873, 879 (Pa. 2008).

In rejecting Appellant's challenge to the weight of the evidence, the trial court explained its reasoning as follows:

> During trial, the Commonwealth called three witnesses: a corrections officer who was present for the incident with [Appellant]; Agent Cuiffi, the investigating officer; and the lab employee who tested the substance. The corrections officer testified that following a search of [Appellant,] he found suboxone strips in his pocket. [Appellant] told the search team that he was working for security and that was why he had the suboxone strips. Agent Cuiffi testified that if an inmate is working for security, they are not allowed to possess controlled substances. The [c]ourt finds that the Commonwealth witnesses were credible. Defense then presented testimony in which [Appellant] testified that Lieutenant English gave him suboxone to work for security because [Appellant had] filed a federal lawsuit against employees of the prison. However, the lawsuits were not filed until after the present incident occurred. The lawsuits also did not include the people that were involved in the incident where [Appellant] had suboxone on his person. The [c]ourt found [Appellant's] testimony was not credible.

As such, the jury['s] verdict was not so contrary to the evidence presented at trial that it would shock one's sense of justice. The evidence presented at trial satisfied each element beyond a reasonable doubt. [Appellant] is not entitled to a new trial merely because the jury did not accept [his] claim of entrapment. [Appellant's] entrapment argument required the jury to believe that the employees at SCI Houtzdale held a grudge against [Appellant] because he filed *pro se* lawsuits against some of the employees of the prison. However, the employees involved in the present incident were not even parties to the lawsuit. Furthermore, [Appellant] was asking the jury to give more weight to his self-serving testimony than to the testimony of the corrections officer and the investigating officer, who would gain no benefit from entrapping [Appellant]. Thus, it was not unreasonable for the jury to give greater weight to the Commonwealth's evidence.

Trial Court Opinion ("TCO"), 5/28/24, at 2-3 (citations omitted).

We discern no abuse of discretion in the court's decision. While Appellant continues to assert that he was "working for security" under the supervision of Lieutenant English to discover which inmates were taking drugs at the prison, CO Sinclair testified that no inmate at the prison works for security like Appellant has claimed. N.T. Jury Trial at 39. Agent Cuiffi further explained that the security office at the prison "doesn't work that way," and that no inmate would be tasked with assisting in an investigation of the availability or use of drugs in the prison in an unofficial capacity. *Id.* at 52. The trial court specifically credited the testimony of these two witnesses. TCO at 2. As the trial court noted, the jury is not required to believe Appellant's self-serving testimony on this issue; it is beyond cavil that finders of fact are free to believe all, some, or none of the evidence presented to them. *Commonwealth v. Murray*, 83 A.3d 137, 154 (Pa. 2013). Appellant has

produced no evidence that the court's decision is a result of bias, partiality, prejudice, ill will, or unreasonableness. After a review of the record, we agree with the trial court that the guilty verdict in this case was not so contrary to the evidence as to shock one's sense of justice. Therefore, this issue is wholly without merit.

Accordingly, we agree with Attorney Marshall's determination that Appellant's challenge to the weight of the evidence supporting his guilty verdict is frivolous. Additionally, our review of the record reveals no other, non-frivolous issues that counsel could assert on Appellant's behalf. We thus affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/28/2025