J-S22017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.W., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: H.W., FATHER | : : : : : : : | No. 155 WDA 2023 |

Appeal from the Order Entered December 31, 2022
In the Court of Common Pleas of Allegheny County
Orphans' Court at No:  CP-02-AP-0000011-2022

BEFORE:  OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.:                **FILED: September 29, 2023**

H.W. ("Father") appeals from the order entered on December 31, 2022, in the Court of Common Pleas of Allegheny County, involuntarily terminating his parental rights to his daughter, L.W. ("Child"), born in August of 2012.[1] Upon careful review, we affirm.

On January 27, 2022, Allegheny County Office of Children, Youth & Families ("CYF") filed a petition for the involuntary termination of Father's and Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2),

_____

[1] By order entered on the same date, the orphans' court involuntarily terminated the parental rights of M.F. ("Mother") with respect to Child.  Mother did not file a notice of appeal.

(5), (8), and (b).  The evidentiary hearing occurred on December 1, 2022,[2] during which then ten-year-old Child was represented by court-appointed counsel who represented her legal interests pursuant to 23 Pa.C.S.A. 2311(a).

CYF presented the testimony of its caseworker, Michele Williams, and the court-appointed licensed psychologist, Beth A. Bliss, Psy.D., *via* video conference, who performed an interactional evaluation between Father and Child in Father's home.  In addition, CYF introduced, and the court admitted, Child's dependency record as Exhibit 3, and Dr. Bliss's report dated 9/28/20 as Exhibit 4, *inter alia*.  Father testified on his own behalf.

The relevant factual and procedural history is as follows.  CYF initiated services for this family in October of 2016, upon Mother's request for assistance with housing and mental health for her and her children.  **See** N.T., 12/1/22, at 54.  At that time, Child was four years old and living with Mother and her paramour, but not Father.  **See id.** at 55.

CYF provided in-home services to Mother until August 27, 2019, when the juvenile court removed Child and the other children from Mother and placed them in the emergency custody of CYF due to physical maltreatment

---

[2] In addition to Child, Mother's parental rights to four younger children were at issue during the involuntary termination proceeding, along with those children's respective fathers.  Father is unrelated to those children, and none are subjects of this appeal.

and neglect, as well as Mother's and her paramour's substance abuse.[3] *See id.* at 58-64, 68. Father was not involved with CYF or Child's life at the time of her removal from Mother. *See id.* at 63, 68.

The juvenile court ultimately adjudicated Child dependent on October 16, 2019. *See id.* at 70. According to Ms. Williams, Father "came forward" in November of 2019, and acknowledged that he suffers from depression, anxiety, and that "he had used marijuana." *Id.* at 63, 71, 127; *see also* Orphans' Court Opinion 3/10/23, at 5. Father testified that, prior to Child's dependency, he had not seen his daughter since 2016. *See id.* at 113-114.

In furtherance of Child's permanency goal of reunification, Father was required to participate in therapeutic visitation with Child through TRAC Services, which the orphans' court described as "a local provider of family-focused and trauma-focused services for children, adults, and families involved in dependency matters." Orphans' Court Opinion 3/10/23, at 5 n.21; *see also* N.T., 12/1/22, at 128-130. However, Father never completed his intake appointment. *See* N.T., 12/1/22, at 130.

Nonetheless, by permanency review order in March of 2020, the juvenile court permitted Father to have supervised visitation with Child. The court

---

[3] Child's dependency record revealed that Father has another minor daughter, H.W., who is approximately two years older than Child. The record does not confirm that H.W. was Mother's child. However, H.W. did reside with Mother and was removed from her at the same time as Child. *See* Exhibit 3, Permanency Review Order, 1/19/21. Neither the parental rights of Father nor Mother in H.W. were at issue during the subject proceeding.

suspended his visits in October of 2020, due to unspecified sexual abuse allegations by H.W. Upon investigation, the sexual abuse allegations were determined to be unfounded. However, by permanency review order in January of 2021, the court ordered that Father's visits with Child remain suspended "until such time that Child's therapeutic treatment team felt they were appropriate due to Child's unstable functioning." Orphans' Court Opinion, 3/10/23, at 7 (citing Permanency Review Order, 1/19/21, at ¶ 30). Child's treatment team never recommended that visits resume, and, thus, Father's visitations remained suspended in the underlying matter. *See id.*

Throughout her dependency, Child has resided in eight separate foster placements. The orphans' court aptly explained as follows.

> Child has experienced multiple traumas, instability, and behavioral difficulties, only achieving some stability and more positive functioning after placement in her current foster home. Child has experienced physical maltreatment in two settings — while in Mother's care and then again in the kinship home of her sibling's godmother, where she resided from late July 2020 to October 8, 2020. Child has experienced severe behavioral difficulties, probably in part due to the trauma she has experienced. These behavioral difficulties have resulted in the additional trauma of multiple placements. Since Child's removal from Mother[,] she has resided first with maternal aunt, then in respite with another relative, then with the godmother who abused her, resulting in admission to psychiatric hospitalization. Following discharge, Child resided in quick succession in another foster home, then with several different respite caregivers, and briefly back with [one of the relatives] while CYF searched for an appropriate placement capable of meeting Child's complex and urgent needs. Child was in eight placements in just over a year.

Orphans' Court Opinion, 3/10/23, at 8-9 (citations to record omitted). In November of 2020, the juvenile court placed Child in a treatment foster home

located in the State of Maryland, where, as stated by the court, she achieved stability and continued to remain at the time of the subject proceeding.

Following the suspension of Father's visits and up to the time of the termination hearing, the juvenile court had held a total of ten hearings, including either permanency or status review hearings. There is no dispute that Father had notice of these hearings. *See* N.T., 12/1/22, at 172. Nevertheless, Father participated in only five of those hearings.

Following the evidentiary hearing, by order dated December 20, 2022, and entered on December 31, 2022, the orphans' court involuntarily terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b). On January 27, 2023, Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The court filed its Rule 1925(a) opinion on March 10, 2023.

On appeal, Father requests that we review whether the orphans' court abused its discretion and/or erred as a matter of law in granting the involuntary termination petition pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b). *See* Father's Brief at 6. In addition, Father requests that we review whether he waived "his right to challenge the [orphans'] court's decision to terminate his parental rights under 23 Pa.C.S.A. § 2511(a)(2)?" *Id.*

We consider Father's issues in the context of determining whether the involuntary termination order is supported by competent evidence. *In re*

*Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record. *Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021).

Our Supreme Court has explained, "An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion," or "the facts could support an opposite result." *In re Adoption of S.P.*, 47 A.3d 817, 826–827 (Pa. 2012). Instead, an appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id*. at 826. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings. *Interest of S.K.L.R.*, 256 A.3d at 1123–1124.

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act ("Act"), which requires a bifurcated analysis. 23 Pa.C.S.A. § 2511. The trial court must initially determine whether the conduct of the parent warrants termination under Section 2511(a). Only if the court determines that the petitioner established grounds for termination under Section 2511(a) does it then engage in assessing the petition under

Section 2511(b), which involves a child's needs and welfare. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

To involuntarily terminate parental rights, the petitioner must prove grounds under both Section 2511(a) and (b) by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***C.M.***, 255 A.3d at 359 (quoting ***Matter of Adoption of Charles E.D.M., II***, 708 A.2d 88, 91 (Pa. 1998)).

In this case, the relevant provisions of the Act are Section 2511(a)(2) and (b), which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct. We have explained, "A parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties." **Matter of Adoption of C.A.W.**, 683 A.2d 911, 914–915 (Pa. Super. 1996) (citation omitted). Further, we have recognized that, under Section 2511(a)(2), a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. **See In re Adoption of M.A.B.**, 166 A.3d 434, 443 (Pa. Super. 2017) (citation omitted).

With respect to Section 2511(b), the court is required to "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). Regarding the "emotional needs and welfare" of the child, our precedent has interpreted it to include "intangibles such as love, comfort, security, and stability." **T.S.M.**, 71 A.3d at 267 (citation and quotation marks omitted).

Our Supreme Court in **In re E.M.**, 620 A.2d 481 (Pa. 1993), first recognized that the "emotional needs and welfare" analysis under Section 2511(b) should include, in part, the child's bond with his or her parent. In doing so, trial courts must examine the effect on the child of severing such a bond, and this includes "a determination of whether the bond is necessary and

- 8 -

beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." ***In the Interest of K.T.***, 296 A.3d 1085 (Pa. 2023). The High Court recently explained:

> Severance of a "necessary and beneficial" bond would predictably cause more than the "adverse" impact that, unfortunately, may occur whenever a bond is present. By contrast, severance of a necessary and beneficial relationship is the kind of loss that would predictably cause "extreme emotional consequences" or significant, irreparable harm. ***See E.M.***, 620 A.2d at 484 ("a beneficial bonding could exist between a parent and child, such that, if the bond were broken, the child could suffer extreme emotional consequences").

***K.T.***, 296 A.3d at 1109-1110 (some citations omitted).

As such, the ***K.T.*** Court distinguished "extreme emotional consequences" from an "adverse impact" to the child when parental rights are terminated. ***Id.*** at 1111. Specifically, the Court cautioned that a trial court "must not truncate its analysis and preclude severance based solely on evidence of an 'adverse' or 'detrimental' impact to the child." ***Id.*** at 1114. The Court concluded, "to grant termination when a parental bond exists, there must be clear and convincing evidence that the bond is not necessary and beneficial." ***Id.***

Moreover, in reiterating that the parental bond is only one part of the analysis, the ***K.T.*** Court held that the "Section 2511(b) inquiry must also include consideration . . . [of] certain evidence **if it is present in the record**." ***Id.*** at 1113, n.28 (emphasis in original). The specific evidence at issue in ***K.T.*** related to the child's need for permanency and the length of time

she had spent in foster care; the pre-adoptive nature of her foster home and the child's bond with foster parents; and whether the foster home met the child's developmental, physical, and emotional needs. *Id.* at 1112. The Court emphasized, however, that these foregoing factors were not an exhaustive list for consideration under all Section 2511(b) analyses. *Id.* at 1113, n.28. Rather, the *K.T.* Court found, as noted above, that the particular facts of each case determine the factors to be considered.

The Court recognized that "case law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *K.T.*, 296 A.3d at 1109. For instance, if relevant in a case, a trial court "can equally emphasize the safety needs of the child" in its analysis under Section 2511(b). *See In re M.M.*, 106 A.3d 114, 118 (Pa. Super. 2014).

In reviewing the subject decree pursuant to Section 2511(a)(2), we reiterate that the following three elements must be proven by clear and convincing evidence before a parent's rights in a child will be terminated:

> (1) repeated and continued incapacity, abuse, neglect or refusal must be shown; (2) such incapacity, abuse, neglect or refusal must be shown to have caused the child to be without essential parental care, control or subsistence; and (3) it must be shown that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Geiger*, 331 A.2d 172, 173-174 (Pa. 1975).

In its Rule 1925(a) opinion, the orphans' court concluded that Father has waived any claim regarding the first element of Section 2511(a)(2). Specifically, the court observes that in his concise statement of errors complained of an appeal, *i.e.*, Rule 1925(b) statement, Father did not assert an error regarding his repeated and continued **incapacity**. **See** Orphans' Court Opinion, 3/10/23, at 12. Rather, Father asserted an error to the extent the court found his conduct demonstrated repeated and continued **abuse, neglect, or refusal**. *Id.*

Father's Rule 1925(b) statement states as follows.

The trial court abused its discretion and/or erred as a matter of law in granting the petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S § 2511(a)(2). There was not clear and convincing evidence of **abuse, refusal, or neglect** by Father. The conditions which led to the removal of the child either no longer exist or can be remedied.

Rule 1925(b) statement, 1/27/23 (emphasis added).

Our Supreme Court has held:

The purpose of a Rule 1925(b) statement is to facilitate appellate review and to provide the parties and the public with the legal basis for a judicial decision. To this end, Rule 1925(b)(4)(ii) provides that the Rule 1925(b) statement "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii) (emphasis added). Highlighting this need for conciseness, Rule 1925(b)(4)(iv) indicates that the Rule 1925(b) statement "should not be redundant or provide lengthy explanations as to any error." Pa.R.A.P. 1925(b)(4)(iv). On the other hand, the Rule 1925(b) statement cannot be too concise, as it must properly specify the errors to be addressed on appeal. . . . Pursuant to Rule 1925(b)(5)(vii), "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."

> To ensure that a Rule 1925(b) statement is both concise but also sufficiently detailed to identify all of the issues desired to be raised on appeal, Rule 1925(b)(4)(v) provides that "[e]ach error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court[.]" Pa.R.A.P. 1925(b)(4)(v) (emphasis added).
>
> . . .
>
> The text of these rules emphasizes that to be "subsidiary issues," the unstated issue must be "included" within the stated issue . . . . Conversely, an unstated issue is not subsidiary when it is separate and distinct from the stated issue.

*Commonwealth v. Price*, 284 A.3d 165, 170-71 (Pa. 2022) (citations, quotation marks, and footnote omitted).; *see also In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) (reiterating that issues not included in the concise statement are waived).

Father contends in his brief that "incapacity" is included within the stated issue in his Rule 1925(b) statement. *See* Father's Brief at 21-22. We agree inasmuch as Father's stated issue challenged the orphans' court's conclusions under Section 2511(a)(2). Indeed, although Father failed to specify "repeated and continued incapacity" in his Rule 1925(b) statement, the orphans' court nonetheless addressed the issue on the merits in its Rule 1925(a) opinion. *See* Orphans' Court Opinion, 3/10/23, at 13-17; *see also Commonwealth v. Arnold*, 284 A.3d 1262, 1269 n.9 (Pa. Super. 2022) (rejecting trial court's claim that a litigant failed to preserve a claim with sufficient specificity pursuant to Rule 1925(b), where "the court's alternative analysis on the merits

demonstrates that it was well-aware of the nature and scope" of the petitioner's argument). Thus, we decline to find waiver in this respect.

Instantly, the court concluded that the evidence demonstrated Father's repeated and continued incapacity, as follows.

> [T]he record established that Father acquiesced to an extended absence from Child's life prior to 2019, failed to exert initiative to attend court or engage with CYF, failed to take advantage of opportunities to become informed about Child's needs, and failed to display parenting skills or meaningful interaction when observed in his own home, a natural environment in which he is comfortable. The [c]ourt viewed this evidence in conjunction with evidence of [C]hild who has experienced severe trauma and instability, major mental health struggles, and serious behavioral issues and who has progressed dramatically with structure, routine, therapy, and attentive parenting. The [c]ourt . . . relied on the above evidence to establish Father's incapacity. . . .

Orphans' Court Opinion, 3/10/23, at 16. The testimony of Ms. Williams and Dr. Bliss, as well as the documentary evidence, supports the court's findings. *See* N.T., 12/1/22, at 20-21, 113-114, 128-130, 172; *see also* Exhibits 3 & 4.

With respect to his lack of involvement with CYF, Father claims that "he had persistent issues throughout the length of his case contacting Ms. Williams." Father's Brief at 18. In its Rule 1925(a) opinion, the court explained:

> Following the allegations of sexual abuse and the suspension of visits, Father's involvement decreased and CYF did not have much contact with him. Of the ten permanency or status reviews held in Child's dependency matter between visit suspension and termination of parental rights hearing, a period of almost two years, Father attended only five hearings. A review of the court orders from this time period shows CYF had little to no contact

with Father, eventually losing contact between May 2022 and September 2022. **The court recognizes that the caseworker, Ms. Williams, was not always diligent in maintaining contact with Father, though she was repeatedly reminded to do so. The permanency review orders in this matter do not reflect that Father ever attempted to get in touch with Ms. Williams or her supervisor to engage with CYS or obtain updates regarding Child.**

Orphans' Court Opinion, 3/10/23, at 8 (emphasis added). Our review of the dependency record admitted into evidence as Exhibit 3 supports the court's findings. We deem reasonable the court's conclusion that, despite Ms. Williams' lack of diligence in maintaining contact, Father was not excused from his affirmative duty to demonstrate interest in Child's life.

Father also claims that the evidence was insufficient to prove "that **the conditions that led to the removal** of [Child] from the care of Father have not or cannot be remedied as required by 23 Pa.C.S. § 2511(a)(2)." Father's Brief at 16 (emphasis added). Father misstates the statutory language of the third element, which does not provide that the conditions that led to the removal of the child have not or cannot be remedied. Father appears to fashion his argument on a portion of an element required in subsections other than Section 2511(a)(2).[4] The third element requires the court to consider

_____

[4] Section 2511(a)(5) and (8) provide:

> **(a) General rule**. — The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

*(Footnote Continued Next Page)*

- 14 -

whether the causes of Father's incapacity which has caused Child to be without parental care, control or subsistence cannot or will not be remedied. The orphans' court found as follows.

> Father has historically been absent from Child's life. Between 2016 and 2019, Father had minimal to no contact with Child. Father testified that prior to Child's removal from Mother's care he was "fighting" to see Child. Despite Father's assertion, the court is unaware of any specific actions, such as seeking custody through the courts, that Father took to ensure he was involved in Child's life. . . .

_____

. . .

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

23 Pa.C.S.A. § 2511(a)(5), (8).

- 15 -

Since Father began participating in Child's dependency matter, he has consistently demonstrated a lack of initiative or effort to be adequately involved in Child's life. As early as the March 6, 2020 permanency review hearing, it was reported that Father had already lost contact with CYF following his interaction with the agency in November 2019. Father's lack of communication was a consistent theme throughout the life of the case. Following the suspension of Father's visitation with Child, Father's engagement with CYF and participation in court hearings only decreased. This court acknowledges that there were ongoing issues regarding communication by the caseworker. The court does not condone her failures. However, her failures do not excuse Father from his obligation to take affirmative steps to remain involved in Child's life.

Father concedes that he is unaware of Child's current mental health needs. Father's admission of this fact underscores his passivity as Child's complex mental health needs have been consistently discussed during review hearings and noted in court orders. At no point was Father prohibited from attending court proceedings, reviewing court orders, or calling the caseworker or foster care agency to inquire about Child's well-being. At no point during the dependency proceedings did Father make any request for access to Child's mental health records, request participation in treatment team meetings, or complete that information or participation were being denied.

Child's mental health and behavioral needs require skilled and consistent parenting. Dr. Bliss's evaluation noted the absence of parenting skills in Father's conduct. Dr. Bliss observed Father's household to be "highly unstructured and chaotic" and Father to be "unable or unmotivated" to facilitate any structure. . . . Though Father claims to desire involvement in Child's life and represents that he is prepared to care for her, these claims are inconsistent with Father's level of involvement in this matter and Dr. Bliss's conclusion that he lacks adequate parenting skills. At no time has Father demonstrated the capacity to provide Child with the kind of structure and stability she requires.

Orphans' Court Opinion, 3/10/23, at 14-16 (footnotes and all citations to record omitted). Upon thorough review, the testimonial and documentary evidence in the certified record supports the foregoing factual findings. We

hold it reasonable for the court to have concluded, in light of its sustainable findings, that the causes of Father's incapacity cannot or will not be remedied. Thus, Father's claims regarding Section 2511(a)(2) fail.

Turning to Section 2511(b), Father asserts that the court abused its discretion and/or erred in terminating his parental rights because he "loves [Child] and has much to offer her. . . . The relationship between Father and [Child] add value to their lives. Termination would unnecessarily and permanently deprive [Child] of her relationship with Father, and it is not best for her needs and welfare." Father's Brief at 20-21. We disagree.

The orphans' court reasoned:

CYF proved by clear and convincing evidence that termination of Father's parental rights served Child's needs and welfare. Competent evidence clearly supported the court's conclusions that Child lacks a bond with Father, will not suffer extreme emotional consequences from termination of Father's parental rights, and that instead, terminating Father's rights will provide the opportunity for permanency that Child needs and deserves.

Orphans' Court Opinion, 3/10/23, at 17-18.

The court relied upon the testimony of Dr. Bliss who opined that, during her virtual interactional evaluation between Father and Child at Father's home in August of 2020, Father "lacked basic parenting skills." N.T., 12/1/22, at 20-21. She described the interactional evaluation as "pure chaos for lack of a better term. It was very unstructured. He didn't seem motivated or able to

provide any structure or discipline in the household."[5] *Id.* at 21. Moreover, she explained that Child was not "interacting much at all" with Father. *Id.* Dr. Bliss opined that, at the time of the evaluation, "I [did] not believe it would have been detrimental to" Child if Father's parental rights were terminated. *Id.* at 22.

In addition, Ms. Williams, the CYF caseworker, testified on direct examination:

> Q. Have you actually gone to Maryland to see [Child]?
>
> A. Yes, I went to Maryland to see her, yes.
>
> Q. When you meet with [Child], does she ask about her parents or ask to visit them?
>
> A. She has not mentioned that to me. Usually [Child is] happy to have me there to play and hang out with her.
>
> Q. [Child] lived with her mother for a long time. Is the agency concerned that there might be a bond with either [Mother] or [Father] such that termination will be detrimental to her?
>
> A. At this time, no. She . . . refers to the foster home as her home. . . .

*Id.* at 155-156.

---

[5] Dr. Bliss testified that there were "multiple children in and out" of the room during the virtual interactional evaluation. N.T., 12/1/22, at 21. During direct examination, Father testified that, at the time of the evaluation and at present, he resided with his paramour and their three children. *Id.* at 109. Father stated that two additional children reside in his home as well, whom we glean are the biological children of his paramour. *Id.*

- 18 -

Ms. Williams testified that Child's foster parents were not certain about providing permanency for Child at the time of the hearing, and so CYF will continue to search for prospective adoption resources. *Id.* at 156-157. She stated, however, that the foster parents are "not asking for [Child] to leave like immediately or tomorrow. They understand that there is a process. Also there is still an opportunity I believe for them to be a permanency resource for her." *Id.* at 156-157. Moreover, Ms. Williams testified that the foster parents continue to ensure that Child receives mental health services on a consistent basis, and that Child has improved since being with them and is "a different kid, she really is." *Id.* at 155. Based on the totality of the record evidence, we discern no abuse of discretion by the court terminating Father's parental rights pursuant to Section 2511(b). Accordingly, we affirm the order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2023