J-A29030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATHAN HOWARD | : | |
| | : | |
| Appellant | : | No. 75 WDA 2024 |

Appeal from the PCRA Order Entered December 21, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001876-2014

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                      **FILED: May 20, 2025**

Nathan Howard ("Howard") appeals *pro se* from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The Honorable Shad Connelly, who presided over Howard's jury trial, detailed the basic facts underlying Howard's convictions as follows.

> After the execution of a search warrant on April 26, 2014, at the El Patio Motel, [Howard] was arrested.  He was charged with various drug offenses and incarcerated in the Erie County Prison. The decedent, Stephen Burkhart [("Burkhart")], was an inmate at the time on B Block where [Howard] was assigned.
>
> On May 2, 2014, Burkhart collapsed and was transported to Hamot Hospital from the prison.  On May 5, 2014, Burkhart was declared brain dead.  The cause was determined to be drug toxicity.  A subsequent investigation determined that [Howard] had provided Burkhart, while in the prison, with the drugs which killed him.

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[Howard] was charged at Count One: drug delivery resulting in death, a felony of the first degree; Count Two: possession of a controlled substance/contraband by an inmate, a felony of the second degree; and at Counts Three, Four and Five, one charge at each count of contraband, controlled substance to a confined person prohibited, all felonies of the second degree.

A jury trial was held from May [18-21], 2015, on the five allegations against [Howard]. The jury found [Howard] guilty of all charges. [Howard] was sentenced . . . on July 21, 2015.

Trial Court Opinion, 4/26/19, at 1-2 (unnecessary capitalization omitted).

Howard did not file a timely notice of appeal, and his appellate rights were reinstated *nunc pro tunc* on February 27, 2019, following a PCRA petition. Howard opted to proceed *pro se* on direct appeal, raising three issues: (1) whether the evidence was insufficient to convict him of drug delivery resulting in death; (2) whether the expert testimony of the forensic pathologist, Dr. Eric Vey ("Dr. Vey"), was improperly admitted because no autopsy was conducted; and (3) whether the trial court erroneously permitted the Commonwealth to introduce evidence of the arrest leading to his incarceration under Pa.R.E. 404(b).

In rejecting Howard's first claim, we detailed the facts supporting the convictions.

Here, the trial court detailed the abundance of evidence to support the jury's determination that [Howard] was guilty of fentanyl delivery resulting in . . . Burkhart's death. In sum, [Howard] was booked into the Erie County Prison after police searched his [m]otel room and recovered heroin and fentanyl. Although [Howard] was strip-searched, the deputy warden testified that the search is not always "100% effective," and in this case, a cavity search was not performed on [Howard]. Another inmate, Michael Dominick [("Dominick")], testified to receiving heroin from [Howard] while incarcerated; after . . . Dominick ingested the

- 2 -

heroin, he woke up in the hospital. Jonathan Amon [("Amon")], also an inmate, testified to seeing the decedent, . . . Burkhart, with heroin in his cell on May 1, 2014. The next day, he witnessed [Howard] shake hands with . . . Burkhart, after which he saw a white piece of paper in . . . Burkhart's hand, which had been empty before the handshake. . . . Amon and . . . Burkhart subsequently snorted the heroin. . . . Amon blacked out and was hospitalized. Later on May 2, 2014, . . . Burkhart was brought to medical as he was suspected of being under the influence of something. . . . Burkhart eventually agreed to be catheterized and tested positive for opiates, and a lab report from a candy wrapper found with . . . Burkhart tested positive for fentanyl. After . . . Burkhart became increasingly ill and died, . . . Dominick told the deputy warden that he got his drugs from [Howard]. [Dr.] Vey, the Erie County Forensic Pathologist, reviewed . . . Burkhart's multiple hospital toxicology reports and concluded within a reasonable degree of medical certainty that [Howard] died "as a consequence of drug toxicity." Dr. Vey specified that . . . Burkhart's "21" fentanyl level "was almost three times the average lethal level [of 8.3]."

*Commonwealth v. Howard*, 229 A.3d 379 (Pa. Super. 2020) (unpublished memorandum at *6-7) (citations omitted).

Turning to the assertion that Dr. Vey's expert opinion should not have been admitted due to the failure to perform an autopsy, we deemed the claim waived since Howard's trial attorney, Gene Placidi, Esquire ("Trial Counsel"), did not object to Dr. Vey's testimony on those grounds. Alternatively, we concluded that Howard could not prevail on the merits. *See id*. at *9.

The third and final issue assailed the trial court's ruling that evidence from Howard's April 26, 2014 arrest at the motel was admissible.[2] The trial

---

[2] In the case stemming from motel arrest, the Commonwealth charged Howard with, *inter alia*, possession of a controlled substance with intent to deliver and consolidated that case with the instant case. The trial court granted Howard's motion to sever the cases without prejudice to the
*(Footnote Continued Next Page)*

- 3 -

court explained that the charge of delivering controlled substances to inmates necessarily involved revealing Howard's incarceration to the jury. Applying the balancing test set forth by Rule 404(b)(2), the trial court concluded that "[t]he probative value of the evidence relating how [Howard] came to be incarcerated, and had the opportunity to have the drug which caused the death of . . . Burkhart, was an essential part of the prosecution, and clearly outweighed any prejudicial effect it may have had on the jury." *Id*. at *10 (*quoting* trial court opinion). We "agree[d] with the trial court's astute reasoning." *Id*.

Howard sought review with our Supreme Court, which denied his petition for allowance of appeal on December 29, 2020. Howard then filed a timely *pro se* petition for PCRA relief on July 30, 2021, raising claims under seven separate headings across fifty-eight pages.

As Howard presents several claims in his brief challenging his counsel's development of the claims raised in his *pro se* PCRA petition, we briefly summarize the factual allegations underlying Howard's *pro se* claims. Howard alleged that: (1) the drugs found during the search of the El Patio Motel room were not his but those of the individual who rented the room; (2) upon his arrival at the Erie County Prison, authorities placed him in a cell with Dominick, who was already in possession of heroin and actively dealing it to other

---

Commonwealth filing a Rule 404(b) motion to admit evidence from the other matter at trial in the trial here.

inmates; (3) Burkhart was also dealing opiates in prison; (4) when Dominick overdosed and was taken to the hospital, the Commonwealth offered him a deal to falsely inculpate Howard; (5) when Burkhart saw Amon pass out, he placed his supply of drugs in the finger of a latex glove, tied the finger off and detached it from the remainder of the glove, and ingested this "balloon" of drugs; (6) the "balloon" burst, and the opiates were nearly instantaneously absorbed in Burkhart's digestive tract; and (7) in order to avoid uncomfortable questions about how the drugs were smuggled into the prison, officials decided to pin the responsibility for Burkhart's death on Howard. **See** *Pro Se* PCRA Petition, 7/30/21, at 7-14.

Due to Howard's history of waiving his right to counsel and proceeding *pro se*, the PCRA court[3] sent Howard a letter asking him if he desired to have counsel appointed to represent him in this PCRA proceeding. Howard responded in the affirmative, but he did "not authorize counsel to reject, remove or otherwise amend any issue in such a manner as to remove it from litigation." *Pro Se* Response, 10/22/2021, at unnumbered 2. The PCRA court appointed William J. Hathaway, Esquire ("PCRA Counsel"), to represent Howard and ordered him to file a "supplemental petition or no merit letter." Order, 12/3/21.

---

[3] The Honorable Marshall J. Piccinini presided over the instant PCRA proceedings.

PCRA Counsel filed a "supplemental" petition on April 1, 2022, purporting to "incorporate[] by reference" the *pro se* petition. Supplemental PCRA Petition, 4/1/22, at 1. The petition also developed arguments addressing a subset of the claims raised in Howard's *pro se* petition. Following the Commonwealth's response, the PCRA court issued an order granting a hearing.

At the January 30, 2023 hearing, PCRA Counsel presented the testimony of Howard and Trial Counsel. The focus of Howard's testimony, as elicited by PCRA Counsel, was his dissatisfaction with Trial Counsel's failure to discuss trial strategy. *See* N.T., 1/30/23, at 32 (Howard agreeing that his "argument is [Trial Counsel] told you he was going to handle the trial strategy and you basically had no input into what the trial strategy was?"). While Howard could not recall the specific details of his discussions with Trial Counsel, he reiterated his fundamental theory that the authorities made him the "scapegoat" for the rampant drug dealing in Erie County Prison and Burkhart's resultant death. *Id*. at 20. Howard testified that Burkhart was selling drugs in prison he obtained through correctional officers or other inmates. *See id*. at 30-31.

Next, PCRA Counsel called Trial Counsel who recalled Howard suggesting to him that correctional employees were selling drugs but did not pursue that strategy because it "was an assumption [Howard] made" and counsel was "not about go to into a court of law and accuse people in the jail of selling drugs without any evidence of it." *Id*. at 42. Counsel reiterated that he "had no

evidence that anybody working at the jail . . . was selling drugs to inmates" or that Burkhart was a drug dealer. *Id*. at 42, 46.

Trial Counsel chose to pursue a reasonable doubt strategy centered on the lack of credibility of the accusing inmates, as well as the Commonwealth's failure to perform an autopsy. *See id*. at 42-45. His strategy included the presentation of a defense expert, Dr. David Fowler ("Dr. Fowler"), who was then the Chief Medical Examiner for the state of Maryland. *See id*. at 41. Dr. Fowler opined at trial that he could not give an opinion on cause of death in this case "without an autopsy." N.T., 5/18/15, at 112. Dr. Fowler noted that the evidence established that Burkhart was examined by correctional officers at 5:00 p.m. and then at 5:15 p.m., only to become unresponsive at 5:26 p.m. That "does not fit with the typical picture of a progressive drug type situation" and he was "concern[ed] . . . that something else intervened, something else catastrophic that is not related to the drugs." *Id*. at 121.

Following the hearing, Howard sent a letter to PCRA Counsel and the PCRA court, challenging the adequacy of his counsel's presentation and development of the claims Howard sought to raise. Specifically, Howard complained that PCRA Counsel "did not articulate any of the multiple issues" at the hearing. *Pro Se* Letter, 3/14/23, at unnumbered 2. He stated that all his "issues ha[d] merit and should have been brought to the PCRA court's attention in order to develop a record[.]" *Id*.

The PCRA court did not respond to Howard's letter, instead issuing an opinion and order dismissing his petition on December 21, 2023. PCRA

Counsel filed a timely notice of appeal on January 16, 2024, and the PCRA court issued an order instructing Howard to file a concise statement pursuant to Pa.R.A.P. 1925(b). In a footnote in its Rule 1925(b) order, the PCRA court advised Howard that, to the extent he desired to proceed *pro se* in this appeal, he should file a motion for remand with this Court. Order, 1/29/24, at 1 n.1 (*citing* **Commonwealth v. Betts**, 240 A.3d 616, 625 n.14 (Pa. Super. 2020) (holding that notice of appeal divests jurisdiction to conduct waiver of counsel hearing absent remand by appellate court)). Howard, through PCRA Counsel, filed a motion for remand, and Howard once again waived his right to counsel and elected to proceed *pro se*. Howard thereafter complied with the PCRA court's order to file a *pro se* concise statement, and the PCRA court filed a supplemental opinion.

Howard now raises eleven issues for our consideration, which we have reordered for ease of disposition.

> 1. Did the PCRA court err and abuse[] its discretion in deeming [Howard]'s jury instruction assignments of error were waived for failing to raise them on direct appeal?
>
> 2. Did the PCRA court err in dismissing [Howard]'s jury instruction on 18 Pa.C.S.[A.] § 2506(a) error that: (A) removed heroin and /or fentanyl's identity as an element; (B) directed a contested fact; (C) the *mens rea* []intentionally [*sic*] misdirected the jury and (D) no *mens rea* instruction on the "results of" element, due to counsel's failure to object?
>
> 3. Did the PCRA court err in dismissing [Howard]'s claim that Trial Counsel was ineffective in his closing summation that did not draw proper conclusions and inferences of reasonable doubt?

4. Did PCRA Counsel meaningfully participate in the adjudication of [Howard]'s first PCRA petition when counsel did not amend the petition violating his right to counsel?

5. Did PCRA Counsel's total lack of communication amount[] to a constructive denial of the rule-based right to counsel on [Howard]'s first PCRA petition?

6. Did Trial Counsel provide deficient performance when he failed to object to the jury charge of contraband to confined persons prohibited, 18 Pa.C.S.[A.] § 5123(a); when the charge sought and the statu[t]e requires that a "convict" be furnished with drugs . . [and did] counsel also fail[] to request a statutory definition of the word "convict," so that the jury would not be misled by the term inmate?

7. Did PCRA Counsel provide ineffective assistance for failing to pursue Trial Counsel's deficient performance in not seeking a directed verdict and/or demurrer at the close of the Commonwealth's case?

8. Did PCRA Counsel fail to develop that Trial Counsel did not object, preserve or request the trial court to give a mens rea instruction to the jury, violating Appellant's right to the due process of law, requiring proof of every element of the alleged crime charged?

9. Did PCRA Counsel provide deficient performance for failing to develop [Howard]'s **Brady** [**v. Maryland**, 373 U.S. 83 (1963)] claim?

10. Did PCRA Counsel fail to develop Trial Counsel's ineffectiveness for failing to object to Commonwealth's witness Dr. . . . Ney's testimonial hearsay, that violated [Howard]'s constitutional right to the Confrontation Clause?

11. Did PCRA Counsel provide ineffective assistance when he failed to ask Trial Counsel whether he had a strategy in not requesting a limiting instruction when the Commonwealth introduced 404(b) evidence in a motion in limine?

Howard's Brief at viii-ix (unnecessary capitalization omitted).

We review the denial of PCRA relief to decide whether the PCRA court's

factual determinations are supported by the record and its legal conclusions

are free of error. ***See Commonwealth v. Small***, 238 A.3d 1267, 1280 (Pa.

2020). When supported by the record, the PCRA court's factual findings and

credibility determinations are binding on this Court, but we review the lower

court's legal conclusions under a *de novo* standard of review. ***See id***. Our

scope of review is limited to the findings of the PCRA court and the evidence

of record, which we view in the light most favorable to the Commonwealth,

the party who prevailed below. ***See id***.

Each of Howard's claims alleges ineffectiveness by Trial Counsel or PCRA

Counsel. The following principles apply to claims that counsel's performance

was constitutionally inadequate.

> We presume that the petitioner's counsel was effective. To
> establish a claim of ineffective assistance of counsel, a defendant
> "must show, by a preponderance of the evidence, ineffective
> assistance of counsel which, in the circumstances of the particular
> case, so undermined the truth-determining process that no
> reliable adjudication of guilt or innocence could have taken place."
>
> The burden is on the defendant to prove all three of the following
> prongs: "(1) the underlying claim is of arguable merit; (2) that
> counsel had no reasonable strategic basis for his or her action or
> inaction; and (3) but for the errors and omissions of counsel, there
> is a reasonable probability that the outcome of the proceedings
> would have been different." Moreover, "[a] failure to satisfy any
> prong of the ineffectiveness test requires rejection of the claim of
> ineffectiveness."

***Commonwealth v. Campbell***, 260 A.3d 272, 277-78 (Pa. Super. 2021)

(citations omitted).

In ***Commonwealth v. Bradley***, 261 A.3d 381 (Pa. 2021), our Supreme

Court held that PCRA petitioners may raise claims of PCRA counsel

- 10 -

ineffectiveness at the first opportunity, even if on appeal. The **Bradley** Court

provided the following instructions for addressing such claims.

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, to advance a request for remand, a petition would be required to provide more than mere "boilerplate assertions of PCRA counsel's ineffectiveness[;"] however, where there are "material facts at issue concerning [claims challenging counsel's stewardship] and relief is not plainly unavailable as a matter of law, the remand should be afforded[.]"

*Id*. at 402 (citations omitted).

We begin with the claims which were raised by PCRA Counsel in the

supplemental petition and addressed by the PCRA court. In his first issue,

Howard argues that the PCRA court erred in concluding that his jury instruction

claims were waived for failing to raise them on direct appeal. Howard avers

that he "couched these claims under [T]rial [C]ounsel's failure to preserve

these structural errors that are axiomatically cognizable under the PCRA."

Howard's Brief at 9.

Howard's argument relates to the statement in the PCRA court opinion

that certain "substantive challenges" raised by Howard in his PCRA petition

could have been pursued on direct appeal and were therefore waived. PCRA

Court Opinion, 12/21/23, at 4. We do not find error in the PCRA court's

conclusion, as the court was simply observing that to the extent Howard was

presenting certain of his claims in his *pro se* petition as direct claims of trial

- 11 -

court error, they were not cognizable under the PCRA. ***See Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 780 (Pa. Super. 2015) (*en banc*) ("At the PCRA stage, claims of trial court error are either previously litigated (if raised on direct appeal) or waived (if not).").  As the PCRA court also addressed each of Howard's claims under an ineffectiveness lens, no relief is due on this issue.  ***See*** PCRA Court Opinion, 12/21/23, at 5 (stating that, notwithstanding waiver of his direct claims of trial court error, Howard's claims of Trial Counsel ineffectiveness were "a proper subject for post-conviction relief" because they "were not previously litigated by Howard on direct appeal, nor could they have been") (citation omitted).

Howard next argues that Trial Counsel ineffectively failed to object to the trial court's instruction for the charge of drug delivery resulting in death. The complete charge read:

> [Howard] has also been charged with delivering drugs that resulted in the death of another person.  To find [Howard] guilty of this offense you must find that the following elements have been proven beyond a reasonable doubt.  First, that [Howard] gave or delivered a controlled substance to . . . Burkhart.  Second, that [Howard] did so intentionally.  Third, that the delivery was in violation of the [C]ontrolled [S]ubstance, Drug, Device and Cosmetic Act, and it would have been under the facts alleged by the Commonwealth.  And fourth, that . . . Burkhart died as a result of using the substance or substances.

N.T., 5/20/15, at 152.

We review jury instructions to determine whether the trial court committed an abuse of discretion or an error of law.  ***See Commonwealth v. Soto***, 202 A.3d 80, 98 (Pa. Super. 2018).  We must "look to the instructions

as a whole, and not simply isolated portions, to determine if the instructions were improper." ***Commonwealth v. Sandusky***, 203 A.3d 1033, 1098 (Pa. Super. 2019) (citation omitted). The trial court has broad discretion and may choose its own words in fashioning jury instructions. ***See Soto***, 202 A.3d at 98. "Our key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." ***Id.*** (citation omitted).

Presently, Howard reiterates the argument raised in his PCRA petition, *i.e.*, that Trial Counsel should have objected on any or all of the following grounds: (1) that the instruction failed to specify whether the jury had to find that heroin or fentanyl caused Burkhart's death; (2) that the trial court should not have told the jury that "it would have been" a violation of the statute "under the facts alleged by the Commonwealth;" and (3) that the jury charge failed to list the applicable *mens rea* with respect to the causation of Burkhart's death.

The PCRA court responded as follows to Howard's argument regarding the failure to specify whether he was charged with causing the victim's death due to intentional delivery of heroin, fentanyl, or both:

> Howard's main point of contention with the jury instruction appears to be that the instruction did not require the jury to make an express finding as to which controlled substance — heroin or fentanyl — resulted in the victim's death, impacting the burden of proof. Judge Connelly instructed the jury that both heroin and fentanyl were controlled substances. The [c]ourt is not aware, however, of any authority (and Howard cites to none) suggesting that a jury is required to agree on the precise controlled substance resulting in the death of the victim or make a specific finding on

the verdict slip in that regard. That being the case, [T]rial [C]ounsel "was under no reasonable obligation to raise a challenge to the instruction, as any such objection would have lacked a then-existing legal foundation." [**Commonwealth v**.] **Drummond**, 285 A.3d [625,] 646 [(Pa. 2002)].

PCRA Court Opinion, 12/21/23, at 11-13 (some citations omitted).

We concur in the trial court's conclusion that Howard has failed to establish that the trial court improperly instructed the jury regarding the controlled substances that caused Burkhart's death. In his brief, Howard discusses cases in which the jury instruction does not match the criminal information. Here, however, the information alleged that "Howard did supply inmate . . . Burkhart with heroin . . . and/or fentanyl, causing . . . Burkhart to die from an overdose after using the substance." Criminal Information (Amended), 10/10/14 (unnecessary capitalization omitted). Howard was thus on notice that the Commonwealth intended to prove that heroin and/or fentanyl caused Burkhart's death, and the instruction is consistent with the information. Howard has cited to no cases, and we are aware of none, holding the court must instruct the jury as to the specific drug ingested by the victim in a drug delivery resulting in death case. Accordingly, there is no arguable merit to the claim.

The PCRA court did not explicitly address Howard's other two challenges to the drug delivery resulting in death jury instruction. Concerning the instruction that the acts alleged would constitute a violation of the Controlled Substance, Drug, Device, and Cosmetic Act, we find that the ineffectiveness claim is not arguably meritorious. The trial court did not instruct the jury to

accept the Commonwealth's allegations as true but rather that fentanyl and/or heroin are controlled substances whose delivery is prohibited under the Controlled Substance Act. *See* N.T., 5/20/15, at 152; *see also id*. at 151-52 (trial court instructing jury "that heroin and Fentanyl are both controlled substances under Pennsylvania law" for purpose of controlled substance contraband to confined person offense). As our Supreme Court has held, whether a particular substance is prohibited by the Controlled Substance Act is a matter of law to be decided by the court, not the jury. *See Commonwealth v. McKetta*, 364 A.2d 1350, 1352 (Pa. 1976).

Howard's last argument concerns the *mens rea* instruction for drug delivery resulting in death. Howard contends that the trial court only instructed the jury on the *mens rea* for the first element of the offense, relating to his delivery of a controlled substance to Burkhart. N.T., 5/20/15, at 152 (trial court stating that the jury must find that Howard "intentionally" "gave or delivered a controlled substance to . . . Burkhart"). However, Howard asserts that the court failed to provide a *mens rea* instruction as to the second element of the offense, namely that Burkhart "die[d] as a result of using the substance" delivered to him. 18 Pa.C.S.A. § 2506(a)

Howard relies on our decision in *Commonwealth v. Kakhankham*, 132 A.3d 986 (Pa. Super. 2015), wherein we held that, not only does the drug delivery resulting in death offense require proof that the defendant *intentionally* delivered a controlled substance but also that the defendant acted *recklessly* with respect to causing the death. *See id*. at 995 (stating

that "the legislature did not intend to impose absolute liability as to the second element of Section 2506" but rather that the "death must be at least 'reckless'"); **see also Commonwealth v. Carr**, 227 A.3d 11, 16 (Pa. Super. 2020). However, our decision in **Kakhankham** was not issued until five months **after** Howard's trial. "[C]ounsel's stewardship must be judged under the existing law at the time of trial and counsel cannot be deemed ineffective for failing to predict future developments or changes in the law." **Commonwealth v. Colon**, 230 A.3d 368, 377 (Pa. Super. 2020) (citation omitted). Therefore, Howard is not entitled to relief on this claim as Trial Counsel cannot be deemed ineffective for not predicting our holding in **Kakhankham** that a recklessness *mens rea* attaches to the causing death element of drug delivery resulting in death.[4]

In his third issue, Howard assails Trial Counsel's performance during closing arguments. He complains that Trial Counsel's argument informed the

---

[4] Even assuming there was arguable merit to Howard's claim, he could not establish a reasonable probability that a jury instruction on recklessness in causing Burkhart's death would have led to a different result at trial. This Court has held that the Commonwealth "satisfies the reckless element as to the possibility of death" for the purpose of drug delivery resulting in death when the substance involved is heroin or fentanyl. **Commonwealth v. Scott**, 325 A.3d 844, 850 (Pa. Super. 2024) (holding recklessness element satisfied "[g]iven the inherent dangerousness of consuming fentanyl in an unknown strength and the high possibility that death could occur"); **see also Kakhankham**, 132 A.3d at 995-96 (holding that intentional delivery of heroin establishes recklessness due to the inherent dangerousness of the drug).

- 16 -

jury that Dominick was the only inmate known to have delivered drugs.[5]  In line with his theory of the case, Howard claims that "Burkhart was the source" of the drugs sold within the Erie County Prison and that Trial Counsel should have made this argument to the jury.  Howard's Brief at 69.  We adopt the PCRA court's well-reasoned rejection of this claim.

> Howard also contends [T]rial [C]ounsel was "markedly inept in neglecting to draw and articulate proper conclusions arising from the totality of the trial record" in his closing argument.  For example, Howard claims [T]rial [C]ounsel did not present to the jury his theory that the victim was the source of the drugs and that corrections officers were bringing the drugs into the prison. But [T]rial [C]ounsel credibly testified that, in his view, this was "a reasonable doubt case, and that was the strategy."  To that end, counsel's focus during the trial was on impeaching the credibility of the Commonwealth's witnesses as well as highlighting the lack of an autopsy.
>
> Trial [C]ounsel further testified credibly that, in his estimation, Howard's claims lacked any evidentiary foundation. He testified that "I had absolutely no evidence that . . . Burkhart was selling drugs.  If . . . Dominick or one of the other three people said it, I find it hard to believe that I wouldn't have argued it to a jury, because that was — that's a moment every defense lawyer looks for in their career."  As he further explained:
>
>> I'm a trial lawyer.  I'm not about to go into a court of law and accuse people in the jail of selling drugs without any evidence of it.  And I had no evidence that anybody working at the jail — be that a guard or be that an employee — was selling drugs to inmates.
>
> "Because of the broad range of legitimate defense strategies at this stage of the proceeding, great deference is accorded counsel's tactical decisions in his closing presentation." ***Commonwealth v. Cooper***, 941 A.2d 655, 664 (Pa. 2007).

---

[5]  Dominick admitted on cross-examination that he delivered drugs to his uncle, a fellow inmate.  ***See*** N.T., 5/18/15, at 67.

- 17 -

> Here, [T]rial [C]ounsel reasonably exercised his discretion in focusing his closing argument on reasonable doubt and witness credibility, rather than on theories for which he could offer no evidence. Because [T]rial [C]ounsel had a reasonable basis for his closing presentation strategy, he was not constitutionally ineffective in this regard.

PCRA Court Opinion, 12/21/23, at 15 (citations to transcript omitted). The record supports the court's conclusion that Trial Counsel articulated a reasonable strategic basis for not pursuing Howard's proposed theory.

The remaining claims challenge PCRA Counsel's stewardship. We first address the two overarching claims of PCRA Counsel ineffectiveness set forth in issues four and five, in which Howard asserts that he was constructively denied counsel. *See Commonwealth v. Kenney*, 732 A.2d 1161, 1165 (Pa. 1999) (providing that if appellate court determines that petitioner "had been wholly deprived of meaningful assistance of counsel in the PCRA court," then it should remand and direct the appointment of new counsel to assist petitioner in prosecuting his claims). In his fourth claim, Howard complains that PCRA Counsel chose to incorporate several of the claims raised in the original *pro se* petition without further development or explication. Howard challenges this incorporation, as it "failed to fully develop the issue[s] . . . with citation to legal authority." Howard's Brief at 15. In his fifth claim, Howard asserts that he was constructively denied counsel due to a "breakdown in communication," alleging that PCRA Counsel "refus[ed] to communicate via phone calls, [e]-mail, video conference, and/or the common courtesy to return letters[.]" *Id*. at 11. Howard maintains that he "is entitled to a remand . . .

for appointment of counsel to prosecute the PCRA petition." Howard's Brief at 18.

Based on our review, we do not find that Howard was deprived of the meaningful assistance of counsel in this PCRA proceeding. Generally the incorporation of *pro se* claims in a counseled petition is improper, as any "attempt to incorporate by reference, without any further explanation or elaboration upon the legal validity of such claims, amounts to hybrid representation" and results in waiver of the *pro se* claims. **Commonwealth v. Johnson**, 179 A.3d 1153, 1157 (Pa. Super. 2018). However, PCRA Counsel did not simply incorporate Howard's *pro se* claims by reference but also restated those same claims in the supplemental petition, avoiding a waiver of Howard's claims. **See id**. We further observe that the inclusion in the supplemental petition of each of Howard's *pro se* claims was consistent with Howard's request to the PCRA court that appointed counsel not "reject, remove or otherwise amend any" of the issues raised in his *pro se* petition. *Pro Se* Response, 10/22/2021, at unnumbered 2.

Accordingly, as PCRA Counsel raised numerous issues on Howard's behalf and developed those claims at the evidentiary hearing on the petition, we do not find a deprivation of the meaningful representation by counsel. We therefore proceed to address Howard's remaining issues, in which he argues that PCRA Counsel ineffectively failed to develop specific claims related to Trial Counsel's conduct. Such layered ineffectiveness claims necessarily requires proof that Trial Counsel was ineffective in taking or omitting some action. **See**

*Commonwealth v. Burkett*, 5 A.3d 1260, 1270 (Pa. Super. 2010) ("In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue."). If the claim fails due to an inability to establish prejudice regarding the underlying claim of ineffectiveness, then we need not remand. *See Commonwealth v. McCready*, 295 A.3d 292, 302 (Pa. Super. 2023) (declining remand to assess PCRA counsel's effectiveness as there was no underlying prejudice to the petitioner from trial counsel's performance).

Howard's next three claims relate to his convictions for three counts of controlled substance contraband to confined person under 18 Pa.C.S.A. § 5123(a), and the trial court's jury instruction as to this offense. The court instructed the jury as follows:

> [Howard] is also charged with three counts of providing contraband to another person, in this case an inmate. To find [Howard] guilty of this offense you must find that the following elements have been proven beyond a reasonable doubt. First, that [Howard] gave to a convict in prison a controlled substance as classified under Pennsylvania law. And I will instruct you that heroin and Fentanyl are both controlled substances under Pennsylvania law. And second, that [Howard] did so without a written permit signed by a physician of the prison. If you find that the [C]ommonwealth has proven those elements beyond a reasonable doubt, you should find [Howard] guilty of furnishing contraband.

N.T., 5/20/15, at 151-52.

Howard's sixth and seventh issues relate to the use of the terms "convict" and "inmate" in the jury instruction and the statute. Howard contends that the statute's effect is limited by its express terms to the furnishing of a controlled substance to a "convict in a prison" or an "inmate in a mental hospital." 18 Pa.C.S.A. § 5123(a). According to Howard, Burkhart and Dominick, the individuals to whom he was charged with furnishing drugs, were not "convicts" or "inmates in a mental hospital" but rather "[p]re-trial [d]etainees" because they had not been convicted of any crime at the time the transfers occurred. Howard's Brief at 20 (emphasis omitted).[6] Howard observes that Section 5123 does not define the term "convict" and points to Section 1991 of the Statutory Construction Act, which defines "convict" as "[a]n individual who has been finally convicted of an indictable offense and is serving sentence in a penal institution." 1 Pa.C.S.A. § 1991. Howard posits that this definition offers support for his claim that Section 5123(a) does not extend to pre-trial detainees.

Howard argues that PCRA Counsel was ineffective for failing to properly develop a claim of Trial Counsel ineffectiveness for not objecting to the jury instruction for controlled substance contraband to confined person. Howard contends that Trial Counsel should have challenged the use of the terms "inmate" and "convict" in the instruction because the use of these terms was

_____

[6] According to Howard, all three men were on the same "pod" in the Erie County Prison, which was limited to pre-trial detainees. **See** Howard's Brief at 20. We accept the assertion as true for purposes of our disposition.

confusing, misleading, and ambiguous. In addition, Howard argues that Trial Counsel ineffectively failed to "seek[] a directed verdict and/or demurrer at the close of the [C]ommonwealth's case," alleging that the Commonwealth "failed to prove beyond a reasonable doubt that [Howard] gave contraband to a '[c]onvict.'" Howard's Brief at 19 (emphasis omitted).

We find no arguable merit to these claims. Howard cites to no authority that excludes the transfer of drugs to a pre-trial detainee from the conduct prohibited by Section 5123(a). We observe that Section 5123(a) uses the term "convict" interchangeably with "confined persons" and "prisoners." 18 Pa.C.S.A. § 5123(a). There is no question that Burkhart and Dominick were "confined persons" within the Erie County Prison even if they had not been convicted of a crime. **See Commonwealth v. Lehman**, 311 A.3d 1034, 1047 (Pa. 2024) (stating that, for the purpose of the Section 5123(a.2) possession offense "to be 'confined in' a certain place requires the individual to have no choice but to remain there at all times"); **see also Commonwealth v. Williams**, 579 A.2d 869, 871 (Pa. 1990) ("The legislative purpose in enacting 18 Pa.C.S. § 5123(a) was obviously to prevent the acquisition of contraband substances by persons **confined in** prisons and mental hospitals.") (emphasis added). Similarly, Burkhart and Dominick, as pre-trial detainees, clearly qualified as "prisoners" under Section 5123. **See Lehman**, 311 A.3d at 1045 (defining a "prisoner" to include someone who: "(1) 'is being confined in prison;' (2) 'has been apprehended by a law-enforcement officer and is in

custody, regardless of whether the person has yet been put in prison;' or (3) 'is taken by force and kept somewhere'") (citation omitted).

Accordingly, we find no support for Howard's claim that his Section 5123(a) conviction was deficient because Burkhart and Dominick were not "convict[s]" or "inmate[s] in a mental hospital." 18 Pa.C.S.A. § 5123(a). Therefore, Trial Counsel was not ineffective for not moving for a directed verdict on this issue. **See Commonwealth v. Dixon**, 276 A.3d 794, 800 (Pa. Super. 2022) (providing that the standard for a motion for a directed verdict is identical to sufficiency of evidence challenge).[7] Moreover, the jury instruction accurately reflected the law regarding the contraband offense, and Trial Counsel was not ineffective for not objecting to the instruction. **See Soto**, 202 A.3d at 98 (stating that key inquiry in reviewing the adequacy of jury instruction is whether it accurately and clearly presents the law to the jury). Howard's sixth and seventh issues warrant no relief.

In his eighth claim, Howard's challenges PCRA counsel's development of the issue of Trial Counsel's failure to object to the absence of a *mens rea* instruction for controlled substance contraband to confined person. Howard cites **Commonwealth v. Arnold**, 284 A.3d 1262 (Pa. Super. 2022), as the

_____

[7] We additionally observe that, as Howard chose to represent himself on direct appeal, he could have raised a sufficiency of the evidence challenge to his convictions for controlled substance contraband to confined person in his appeal. That he did not pursue such a challenge cannot serve as the basis for a PCRA claim. **See Commonwealth v. Fletcher**, 986 A.2d 759, 774 (Pa. 2009) (stating that a defendant cannot allege his own ineffectiveness).

legal basis for relief. In that case, Arnold was convicted under the portion of Section 5123(a) that prohibits an individual who "brings [a controlled substance] into any prison, mental hospital, or any building appurtenant thereto." 18 Pa.C.S.A. § 5123(a). On appeal, Arnold challenged the trial court's refusal to give a *mens rea* instruction for this offense. We agreed, holding that the *mens rea* of recklessness applies, and remanded for a new trial. *See Arnold*, 284 A.3d at 1276.

Assuming the *mens rea* of recklessness also applies to the "sell[ing], giv[ing], transmit[ting] or furnish[ing]" controlled substances offense of which Howard was convicted, 18 Pa.C.S.A. § 5123(a), the ruling in *Arnold* would still not support a finding of Trial Counsel's ineffectiveness. *Arnold* was decided more than seven years after Howard's trial. Trial Counsel's performance must be measured the law in effect at the time of trial, and we cannot find him ineffective based on developments in the law after that date. *See Colon*, 230 A.3d at 377. Therefore, no relief is due on Howard's eighth issue.[8]

_____

[8] Even assuming this claim were meritorious, we would not find that Howard sustained prejudice from the absence of an instruction requiring the jury find that he was reckless in furnishing drugs to Burkhart and Dominick. We first note that the jury instruction for drug delivery resulting in death included a *mens rea* element, requiring the jury find Howard "intentionally" delivered a controlled substance to Burkhart. N.T., 5/20/15, at 152. Therefore, the jury found that Howard acted intentionally with respect to one of the drug transfers in prison, specifically the delivery of the heroin or fentanyl that led to Burkhart's death.

*(Footnote Continued Next Page)*

In his ninth claim, Howard avers PCRA Counsel "failed to fully develop [Howard]'s ***Brady*** claim, largely due to a lack of understanding of what the actual legal issue was." Howard's Brief at 43. As discussed above, Howard alleged in his *pro se* PCRA petition that Burkhart died after the "ballon" of drugs he ingested burst. ***See*** Howard's Brief at 47. Howard avers that the Commonwealth deliberately decided not to conduct an autopsy of Burkhart to conceal this version of events. "By knowingly not performing an autopsy, proof of the balloon popping [was] hidden from view[.]" ***Id***.

***Brady*** "imposes upon a prosecutor the obligation to disclose all favorable evidence that is material to the guilt or punishment of an accused, even in the absence of a specific request by the accused." ***Commonwealth v. Bagnall***, 235 A.3d 1075, 1085 (Pa. 2020). To establish a ***Brady*** violation, "a defendant has the burden to prove that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the evidence, either willfully

_____

Second, this case is distinguishable from ***Arnold***, where the controlled substance at issue — a single Subutex pill — was discovered in the sock attached to Arnold's prosthetic leg when he reported for a probation violation. ***See Arnold***, 284 A.3d at 1266-67. Arnold presented evidence that he forgot the pill was in his sock when he arrived at the prison and sought an "ignorance or mistake" jury instruction. ***Id***. at 1275-76. Here, by contrast, there was no comparable claim that Howard mistakenly brought drugs into prison, or that he passed items to the other prisoners which he had no reason to believe constituted controlled substances. Rather, his defense at trial was that the inmates who testified he provided drugs to them were not credible witnesses. Thus, we conclude that there was not a reasonable probability of a different result at trial if a *mens rea* instruction had been given.

or inadvertently; and (3) the evidence was material, meaning that prejudice must have ensued." *Id.* at 1086.

Howard's *Brady* ineffectiveness claim fails because he has failed to allege the existence of favorable evidence. *See Commonwealth v. Busanet*, 54 A.3d 35, 48-49 (Pa. 2012) (holding that defendant's *Brady* claim failed when he failed to prove the existence of "exculpatory or impeaching evidence that the Commonwealth had an obligation to disclose under *Brady*"). Rather, Howard premises his *Brady* claim on steps that authorities failed to take, namely to conduct an autopsy of Burkhart's body. As it is undisputed that no autopsy occurred and therefore there was no autopsy report to produce, PCRA Counsel was not ineffective for not pursuing a *Brady* claim. *See id*.[9]

To the extent Howard alleges a failure of the duty to investigate Howard's theory regarding Burkhart's death, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete

---

[9] Howard also cites *Arizona v. Youngblood*, 488 U.S. 51 (1988), in support of this claim. *See* Howard's Brief at 48-49. In that case, the High Court held that the "failure to preserve potentially useful evidence" can constitute a denial of due process of law, but only if the defendant can show bad faith by the police. *Id*. at 58; *see also Commonwealth v. Chamberlain*, 30 A.3d 381, 402 (Pa. 2011). However, as no autopsy was performed here, there was no "failure to preserve" an autopsy report. *Youngblood*, 488 U.S. at 58. To the extent Howard bases his claim on the failure to preserve Burkhart's body for analysis by his own expert, Howard has alleged no facts that would demonstrate that the Erie County Coroner acted in bad faith when not ordering an autopsy.

investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." ***Strickland v. Washington***, 466 U.S. 668, 690–91 (1984). Trial Counsel testified there was no evidence to suggest pursuing this theory beyond Howard's own speculation. Trial Counsel clearly "made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [Howard's] interests." ***Commonwealth v. Dunbar***, 470 A.2d 74, 77 (Pa. 1983); ***see*** PCRA Court Opinion, 12/21/23, at 15 (finding credible Trial Counsel's testimony that he pursued a reasonable doubt strategy because there was no evidence to support Howard's theories of the case). Thus, the underlying claim of Trial Counsel ineffectiveness fails, and PCRA Counsel was not ineffective. Howard's ninth issue merits no relief.

Howard's tenth issue concerns the expert testimony of the Commonwealth's forensic pathology expert, Dr. Vey. He maintains that Trial Counsel ineffectively failed to raise a Confrontation Clause[10] objection concerning Dr. Vey's reliance on the toxicology report. ***See*** Howard's Brief at 55 (*citing* ***Commonwealth v. Yohe***, 79 A.3d 520 (Pa. 2013), holding that admission of toxicology report establishing the defendant's blood alcohol level was testimonial and therefore defendant had the right to confront the author of the report). The toxicology report here established the presence and levels

---

[10] ***See*** U.S. Const. amend. VI (guaranteeing right of criminal defendant "to be confronted with the witnesses against him"); ***see also*** Pa. Const. Art. I, § 9.

of opiates in Burkhart's blood, and Dr. Vey, in turn, used those results to formulate his opinion as to cause of death. Howard argues that: he was entitled to confront the author of the report; Trial Counsel ineffectively failed to lodge an objection in that regard; and PCRA Counsel did not adequately present and litigate the issue.

We conclude that Howard has failed to establish prejudice. His primary complaint is not that the blood results themselves may have been inaccurate, but rather with Dr. Vey's expert conclusions based on the data.[11] He argues that the author of the toxicology report "could opine on how [Burkhart] received a Narcan [dose] and became stable; yet, without any intervening contact, [Burkhart] suffered an excessive absorption of drugs four hours later that proved fatal." Howard's Brief at 57. We fail to see why the author of the report would be able to shed light on those topics. The Confrontation Clause would have permitted Howard to examine the author on the calculation of his blood test results, not on the treatment Burkhart received in prison or on his cause of death.

We further find that Howard's claim lacks arguable merit. The trial court would have overruled any objection Trial Counsel made to Dr. Vey's reliance on the toxicology report because Howard had already admitted that evidence

_____

[11] We reiterate that Howard does not deny Burkhart's intoxication, but rather his theory is that Burkhart died after the "balloon" of drugs he voluntarily ingested burst in his intestines.

- 28 -

during the testimony of his medical expert, Dr. Fowler.[12]  ***See*** N.T., 5/19/15, at 112-20 (Dr. Fowler testifying to results of toxicology report, which was admitted as Defendant's Exhibit F).  It is "uncontroversial . . . that a defendant cannot offer evidence on his own behalf at trial and then complain of error in the admission of that evidence."  ***Commonwealth v. Stevenson***, 318 A.3d 1264, 1279 (Pa. 2024).  Howard does not address the earlier admission of the toxicology report, nor does he claim that Trial Counsel was ineffective for admitting the report during the testimony of the defense expert.  No relief is due on Howard's tenth issue.

In his final issue, Howard argues that, during the evidentiary hearing, PCRA Counsel ineffectively litigated the claim of Trial Counsel ineffectiveness for failing to request a limiting instruction regarding evidence of his arrest at the El Patio Motel.  As discussed above, Trial Counsel prevailed on a motion to sever the drug charges related to the motel arrest from the instant case. However, the Commonwealth then filed a motion pursuant to Rule 404(b) to introduce evidence of Howard's arrest and the discovery of heroin and fentanyl in the motel room.  The trial court ruled that it would allow the Commonwealth to introduce "the facts as to the heroin and the arrest close in time.  That's it."  N.T., 5/18/15, at 13.  As Howard observes, Trial Counsel did not request a limiting instruction at trial concerning this other bad acts evidence.

---

[12] With the consent of the Commonwealth, Dr. Fowler testified out of order due to scheduling issues.  ***See*** N.T., 5/19/15, at 98.

We agree that there is arguable merit to the underlying claim of Trial Counsel ineffectiveness. *See Commonwealth v. Webb*, 236 A.3d 1170, 1179 (Pa. Super. 2020) ("Where evidence of prior bad acts is admitted, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose."). As to counsel's reasonable strategic basis, Howard argues, and the PCRA court agreed, that PCRA Counsel "fail[ed] to meaningfully develop the issue of a lack of a cautionary instruction" during the evidentiary hearing. PCRA Court Opinion, 12/21/23, at 14. However, the PCRA court concluded that Howard could not establish prejudice:

> [E]ven assuming [T]rial [C]ounsel lacked a reasonable basis for failing to seek a cautionary instruction, the [c]ourt finds that such an error was not prejudicial — that is, Howard has not demonstrated a reasonable probability that the outcome of the proceedings would have been different — in light of "the abundance of evidence to support the jury's determination that [Howard] was guilty of fentanyl delivery resulting in . . . Burkhart's death." *Howard*, [229 A.3d 379 (unpublished memorandum at *3)]; *see also Commonwealth v. Boyer*, 856 A.2d 149, 155 (Pa. Super. 2004) (although it was error to admit a co-defendant's guilty plea without a cautionary instruction, that error was harmless, where there was a proper basis for admitting the plea and the other evidence of guilt was overwhelming). Here, in particular, the fact that Howard was incarcerated for a previous offense was presupposed based upon the crimes charged. In that sense, the existence of the prior bad act evidence was more or less cumulative.

*Id*.

We agree with the PCRA court that there is not a reasonable probability that the outcome of the proceeding would have been different if Trial Counsel had sought the cautionary instruction. Thus, PCRA Counsel's failure to

- 30 -

address Trial Counsel's reasonable strategic basis in not seeking a limiting instruction did not prejudice Howard, since the underlying claim of Trial Counsel ineffectiveness was not prejudicial.

As we find no merit to any of Howard's issues, we affirm the PCRA court's order dismissing his petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

**5/20/2025**